469 P.2d 166

STATE of New Mexico, Plaintiff-Appellee,

v.

Gene J. TORRES, Defendant-Appellant.

No. 363.

Court of Appeals of New Mexico.

Jan. 30, 1970.

Rehearing Denied March 25, 1970.

Certiorari Denied May 6, 1970.

Lorenzo E. Tapia, Thomas L. Marek, Albuquerque, for appellant.

James A. Maloney, Atty. Gen., Santa Fe, Vince D'Angelo, Asst. Atty. Gen., for appellee.

## OPINION

WOOD, Judge.

Defendant appeals his conviction of aggravated assault. Section 40A–3–2, N.M. S.A.1953 (Repl.Vol. 6). The issues concern: (1) lack of counsel at arraignment; (2) line-up identification; (3) standing to claim unlawful search and seizure; (4) lawfulness of the search and seizure; (5) reference to intended proof in the opening statement with no attempt at such proof; (6) cross-examination as to defendant's misconduct; and, (7) impeachment of a witness.

### Lack of counsel at arraignment.

At defendant's arraignment in District Court, the court inquired if defendant had an attorney. The defendant replied that he did not; that he had not had time to raise funds to employ an attorney of his own choice. The Assistant District Attorney suggested the court either appoint an attorney for defendant or set a date for defendant to have an attorney of his choice so that the case could proceed. The court's response was that defendant had been advised of the hearing. It proceeded with the arraignment. Defendant pled not guilty. After entry of the plea, the court advised defendant that if he didn't have an attorney within one week then the court would appoint an attorney to represent defendant.

Defendant contends his arraignment without counsel was prejudicial error. He also contends the court erred in failing to advise him of his right to counsel. He relies on his constitutional right to be represented by counsel in criminal proceedings, upon House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739 (1945), upon the provisions of our Indigent Defense Act, §§ 41–22–1 to 41–22–10, N.M.S.A.1953 (Repl. Vol. 6, Supp.1969), and upon the rule that waiver of his constitutional right to counsel will not be presumed from a silent record. See Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

House v. Mayo, supra, does not support defendant's contentions. In that case "* * * the trial court, without warning and over petitioner's protests, forced him

to plead to the information without the aid and advice of his counsel, whose presence he requested. * * *" The facts here are quite different—defendant had been advised of the arraignment, he did not protest against proceeding without counsel, he did not ask for a delay until counsel could be present.

Nor does the Indigent Defense Act support defendant's contentions. That Act provides that a needy person is entitled to be represented by an attorney and provides for a determination of whether a defendant is a needy person upon a defendant's first appearance in court. It also provides that the presiding officer at a judicial proceeding shall inform the defendant of his right to be represented by counsel at public expense. See respectively §§ 41–22–3, 41–22–5 and 41–22–4(B), supra.

There being no claim of indigency at the trial level, the only portion of the Act applicable to defendant's contention is the requirement that the defendant be advised of his right to be represented by counsel. The record at arraignment discloses defendant was advised that if he could not employ counsel within a week the court would appoint counsel. The record shows the arraignment was defendant's first court appearance. Under these circumstances, we do not consider the Indigent Defense Act to have been violated.

■ We agree that defendant has a constitutional right to counsel in criminal proceedings and thus has a constitutional right to be represented by counsel at his arraignment. We also agree that defendant will not be presumed to have waived that right if the record is silent as to waiver. However, it does not follow that the absence of counsel at arraignment, the lack of a specific waiver by defendant, or the failure of the judge to specifically advise the defendant of his right to have appointed counsel at the arraignment amounts to reversible error. The New Mexico decisions require a showing of prejudice. See State v. Hardy, 78 N.M. 374, 431 P.2d 752

(1967); State v. Cisneros, 77 N.M. 361, 423 P.2d 45 (1967); Gantar v. Cox, 74 N. M. 526, 395 P.2d 354 (1964).

■ Defendant was represented by counsel at a line-up conducted on the day following the offense. At arraignment his plea was not guilty. Nothing which occurred at arraignment was used against him. Subsequent to the arraignment he was again represented by counsel. Presumably, this counsel was of his own choosing since the record does not show any court appointed counsel at the trial level. Under these facts defendant was not prejudiced by absence of counsel at arraignment. State v. Cisneros, supra; Gantar v. Cox, supra. In so holding, we are not, as defendant contends, indulging in "* * * nice calculations as to the amount of prejudice * * *." See State v. Tapia, 75 N.M. 757, 411 P.2d 234 (1966). Our holding is that on the record before us, there is no possibility of prejudice. We note that defendant does not claim any prejudice.

■ Subsequent to arraignment, defendant's counsel filed numerous pre-trial motions and represented defendant at his trial. Absence of counsel at arraignment was not raised as an issue until after the trial. A defendant has a duty to point out claimed errors in the administration of justice as they occur. See State v. Duran, 80 N.M. 406, 456 P.2d 880 (Ct.App.1969). Having gone to trial without asserting any error because of lack of counsel at arraignment or because the judge did not advise defendant of his right to counsel, defendant waived the claimed error. Compare Sanders v. Cox, 74 N.M. 524, 395 P.2d 353 (1964), cert. denied 379 U.S. 978, 85 S.Ct. 680, 13 L.Ed.2d 569 (1965). In so holding, we are not, as defendant contends, presuming waiver from a silent record. The waiver appears affirmatively. It occurred when defendant, with counsel, proceeded to trial without raising the issue. Compare State v. Whitfield, 81 N.M. 34, 462 P.2d 619, decided December 29, 1969.

*Line-up identification.*

The victim of the aggravated assault was Joe Martinez. At the time of the assault Joe was with a female companion, Patsy Mora. Approximately 12 hours after the assault, defendant was one of the participants in a line-up. Joe viewed the line-up and tentatively identified defendant as his assailant. Patsy also viewed the line-up; she positively identified defendant as the offender.

Since the decisions in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the manner of an extra-judicial identification has affected the admissibility of identification evidence at trial. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). If the extra-judicial identification, such as a line-up, was "* * * unnecessarily suggestive and conducive to irreparable mistaken identification * * *." a defendant would be denied due process if evidence concerning such an extra-judicial identification was admitted at his trial. Gilbert v. California, supra; United States v. Wade, supra. See Stovall v. Denno, 388 U.S. 293, ·87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ This does not require the exclusion ·of all identification testimony. Even if there has been an improper extra-judicial identification, this fact does not require the exclusion of an in-court identification which is independent of and not tainted by the extra-judicial identification. See Gilbert v. California, supra; United States v. Wade, supra.

■ In this case there was no independ-·ent in-court identification of defendant. At trial both Joe and Patsy testified concerning their identification of defendant at ·the line-up. Compare State v. Clark, 80 N.M. 91, 451 P.2d 995 (Ct.App.1969), re-·versed on other grounds, 80 N.M. 340, 455 P.2d 844 (1969); State v. Carrothers, 79 N.M. 347, 443 P.2d 517 (Ct.App.1968). Accordingly, the issue is whether the line-up procedures were so unnecessarily suggestive and conducive to irreparable mistaken identification that the admission, at trial, of Joe and Patsy's testimony concerning their line-up identification of defendant denied defendant a fair trial. This is a recognized ground of attack independent of any right to counsel claim. Stovall v. Denno, supra.

With the jury excluded, the trial court heard the testimony of one witness and considered exhibits consisting of a photograph of the line-up and police records concerning the participants in the line-up. This evidence went: (a) to the failure of the police to comply with suggestions from defendant's attorney as to participants in the line-up and how the line-up should be conducted; (b) to the age, height, weight, dress and physical characteristics of participants in the line-up; (c) to one of the line-up participants directing the line-up; (d) to Joe and Patsy viewing defendant in the hallway prior to the line-up; and, (e) to a police officer asking Patsy "well, what's the matter" when Patsy hesitated upon viewing the defendant. In addition, the witness testified that a police officer told defendant that if he did stand in a line-up the results would not be used against him.

After presentation of this evidence, the trial court denied defendant's motion to suppress testimony concerning the line-up identification of defendant. In denying the motion, the trial court ruled that, on the basis of the evidence presented, it was not an unfair line-up. We need not decide whether the foregoing items establish an unfair line-up as a matter of law or whether the trial court erred in its ruling as to the evidence presented. Such a decision is unnecessary because the trial court's ruling was premature.

■ "* * * [A] claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, * * *." Stoval v. Denno, supra. The fairness of the line-up requires consideration of the

totality of the circumstances. Foster v. California, 394 U.S. 440, 22 L.Ed.2d 402, 89 S.Ct. 1127 (1969). The trial court's ruling was premature because its judgment was not based on the totality of the circumstances. Defendant had informed the trial court that he would call additional witnesses concerning the fairness of the line-up procedure. The trial court ruled without permitting the additional witnesses to testify. Defendant made a tender of the testimony he was not permitted to present.

One of the witnesses was Patsy; her testimony was of particular importance to defendant. We give one example as to its importance. On the night of the assault Patsy had given a written statement to the police in which she described the assailant as having blond hair and that the hair appeared to be crew cut. Subsequent to her line-up identification of defendant, who did not have blond hair, she gave a written statement to defendant's attorney. In this second statement she declared her line-up identification was mistaken. Among other things, Patsy said:

"* * * Detectives told me that they were positive that they had the right guy, and that he was a member of the Sheriffs Office and he had reported a missing gun. They told me his name was Gene Torres, * * * Before the Police—line up one of the detectives told me that I had said that the person fighting with Joe, had blond hair, but that Gene Torres, had brown hair, and it was crew-cut. This detective also told me that the suspects brother was a hair stylist and that he could have had the color of his hair changed. * * *"

The foregoing extract from Patsy's second statement is pertinent to the fairness of the line-up since it points directly to the police suggesting the identification to be made. Patsy repudiated the second statement at trial. If she had done so at the motion hearing, the trial court would have to resolve the issue of her credibility in deciding whether the line-up was unfair. If she had affirmed her second statement at the motion hearing the trial court would have to consider this second statement in deciding on the fairness of the line-up. Either way, the trial court failed to consider the totality of the circumstances in ruling that the testimony of the line-up identification should go to the jury.

Since we affirm as to the other issues raised by defendant, what is the effect of the trial court's error in refusing to hear defendant's evidence concerning the line-up? We cannot characterize the error as harmless since evidence as to the line-up identification is the only evidence which directly identifies the defendant. If, however, the line-up procedure was fair under the totality of the circumstances, evidence as to the line-up identification was properly admitted.

Our view is that the trial court must decide whether under all the circumstances the line-up procedure was so unfair that evidence as to the line-up identification should have been excluded. Accordingly, we vacate the conviction and sentence pending the trial court's determination. If the trial court determines the line-up procedures were unfair, then it must award defendant a new trial. If it determines the line-up procedures were not unnecessarily suggestive or not conducive to irreparable mistaken identification, then defendant's conviction and sentence should be reinstated. Compare United States v. Wade, supra.

*Standing to claim unlawful search and seizure.*

Two exhibits introduced as evidence against defendant were a coat with a button missing and a scarf. Defendant moved to suppress these items. The trial court ruled that defendant did not have standing to claim an unlawful search and seizure. The two exhibits were taken from the trunk of a car parked in the back yard of defendant's home. Defendant claims he has standing to challenge the admissibility of the two exhibits because of the physical

location of the car at the time of the search and seizure. We disagree.

 Constitutional provisions prohibiting unreasonable searches and seizures "* * * are personal rights, and that they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." Simmons v. United States, supra. To have standing one must be the victim of the search in the sense that one's right of privacy was invaded. United States v. Kucinich, 404 F.2d 262 (6th Cir. 1968); Sumrall v. United States, 382 F.2d 651 (10th Cir. 1967), cert. denied 389 U.S. 1055, 88 S.Ct. 806, 19 L.Ed.2d 853 (1968).

 The car that was searched did not belong to defendant nor does the record show that he claimed any possessory interest in the car. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 933 (1960). The fact that the car was parked on defendant's property when it was searched does not give defendant standing to challenge the search and seizure. The search of the car's trunk and the removal of the two exhibits therefrom was not an invasion of defendant's right of privacy.

Defendant also seems to claim standing on the basis that the exhibits were introduced as evidence against him. The contention is fallacious. To have standing his rights must have been invaded. His rights were not invaded simply because the exhibits were introduced as evidence against him. United States v. Humphrey, 409 F.2d 1055 (10th Cir. 1969); see Jones v. United States, supra.

 Defendant, of course, would have standing to challenge the search and seizure if he were the owner or possessor of the seized property. Simmons v. United States, supra; Jones v. United States, su-

pra; United States v. Graham, 391 F.2d 439 (6th Cir. 1968). At no time did defendant claim ownership of or a possessory interest in the scarf. Defendant had no standing to claim the scarf was obtained through an unlawful search or seizure.

However, at the hearing on the motion, it was stipulated that the coat belonged to the defendant. The trial court accepted the stipulation for the purposes of the motion. This stipulation as to defendant's ownership of the coat gave defendant standing to challenge the search for and the seizure of the coat.[1] The trial court erred in ruling to the contrary.

The State asks us to affirm the trial court's ruling as to lack of standing because at trial defendant testified the coat was not his. The State's argument is based on a misconception of the sequence of events. When the trial court ruled defendant did not have standing the parties had stipulated that the coat was, in fact, his. At that point defendant had standing. At that point the issue was whether the search and seizure was lawful. The coat was already in evidence, over defendant's objection, when defendant denied the coat was his.

*Lawfulness of the search and seizure.*

Since defendant had standing to challenge the lawfulness of the search for and seizure of the coat, the trial court should have ruled on this issue. Since it did not, we must determine whether, as a matter of law, the search and seizure was valid. In this case we are able to make that determination.

 A search and seizure may be by consent, as an incident to a lawful arrest or pursuant to a legal search warrant. State v. Sedillo, 79 N.M. 289, 442 P.2d 601 (Ct.App.1968). The owner of the car that

---

1. At trial, defendant took the stand and, under oath, denied the coat was his. Thus, the situation is similar to that with which Justice Black's dissent was concerned in Simmons v. United States, supra. Since, however, defendant obtained standing by the stipulation, he has not sworn that the coat belonged to him. Because of the stipulation, defendant has not given contradictory testimony under oath and the chance of a successful perjury prosecution has been considerably weakened.

was searched, defendant's mother, did not consent to the search. Defendant contends the search cannot be sustained as an incident to detention of the mother by the police because her detention was unlawful and the elapsed time between her detention and the search was unreasonable. We do not decide this issue since in our opinion the search for and seizure of the coat was pursuant to a legal search warrant.

Defendant contends there was no probable cause for issuance of the search warrant. The Constitution of New Mexico, Art. II, § 10, states that no search warrant is to be issued without a written showing of probable cause. Accordingly, we examine the application for the search warrant. See State v. Lewis, 80 N.M. 274, 454 P.2d 360 (Ct.App.1969).

The application is an affidavit. It asks that authority be granted to search a particularly described car for: "A coat with one or more buttons missing. The buttons are of a plastic composition and brown and grey in color."

The "probable cause" portion of the affidavit states:

"Joe Martinez reported to the Albuquerque Police Department that he had been assaulted with a gun by a man he later identified in a line-up as Gene Torres. At the place where this assault is alleged to have occurred, a key identified by Mr. Martinez, was found and a button of plastic composition and brown and grey in color was also found which the complainant, Mr. Martinez could not identify. A search warrant was acquired for the residence of the defendant, Gene Torres and after arriving at this residence at 420 Garcia N. E.; it was determined that Officer John Dear, who had the house under surveillance had observed Mrs. Olga Torres removing items from Gene Torres's house and placing them in the trunk of her vehicle described above."

The affidavit clearly shows how the officer concluded that the specific item for which they were looking might be in the car. Compare State v. Miller, 76 N.M. 62, 412 P.2d 240 (1966). It affirmatively shows that two sources of the affiant's information—Joe Martinez and Officer John Dear—spoke with personal knowledge. Compare Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). While the source of affiant's knowledge that a search warrant had been issued for the residence is not expressly stated, the context of the statement concerning that search warrant and the fact that affiant swore to the statement as a fact and not based upon information and belief, indicates that the statement was made on personal knowledge. Compare United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Here we have more than police suspicion and an unsubstantiated informer's tip. Compare Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The affidavit shows "* * * a belief, reasonably arising out of circumstances known * * * that an automobile * * * contains that which by law is subject to seizure * * *." Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925); see Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Thus, the affidavit was sufficient. The district judge who found the affidavit showed probable cause and who issued the search warrant, did not err in so doing.

Defendant's specific contentions as to lack of probable cause are: (a) no allegations indicating that the button was the result of a struggle which may have accounted for the button at the place of the assault; (b) no allegations to either link the button with any coat owned by the defendant or by the defendant himself; (c) the mere allegation by itself that Mrs. Olga Torres was removing items from the defendant's home would not show probable cause that the coat would be in the trunk of the car; and, (d) the person described as Mrs. Torres was not shown to be any relative of the defendant nor in fact his mother.

By these contentions, defendant would impose technical requirements on the showing of probable cause. "* * * Technical requirements of elaborate specificity * * * have no proper place in this area. * * *" United States v. Ventresca, supra. Further, we fail to see any basis for contentions (a) and (d) so long as the affidavit showed probable cause to connect defendant with the search of the car for the coat. The affidavit did so, and thus answers contentions (b) and (c). The affidavit shows probable cause that defendant was at the scene of the crime; that a button, which the victim could not identify, was found at the scene; that Mrs. Torres was seen removing items from defendant's home and placing them in the car. From this a reasonable belief could arise that the coat from which the button came might be in the car. "* * * [A]ffidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, * * *." Spinelli v. United States, supra.

Defendant also asserts the search warrant should be held invalid on the basis that information set forth in the affidavit was the result of a prior unlawful search of defendant's home. This contention mistakes the contents of the affidavit. The probable cause of the affidavit is not based on any prior search, but on the fact that Mrs. Torres was seen removing items from the home. Since the search of the trunk of the car was pursuant to a search warrant based upon an affidavit showing probable cause, we need not, and do not decide, whether there was an illegal search of defendant's home.

*Attorney misconduct—reference to intended items of proof in opening statement with no attempted proof of those items.*

In his opening statement the prosecutor indicated the jury would hear testimony as to the blood type of defendant and of the victim of the assault. No attempt was made to prove either of the blood types. Defendant asserts this was

misconduct on the part of the prosecutor entitling him to a new trial. We disagree. Such is not misconduct requiring a reversal unless the prosecutor acted in bad faith. State v. McDonald, 21 N.M. 110, 152 P. 1139 (1915).

Defendant, at a post trial motion hearing, asserted that the failure to introduce evidence as to blood type was prejudicial. However, he did not explain the basis for this conclusion or attempt in any way to show the prosecutor acted in bad faith. The prosecutor, responding, stated that he did not offer evidence concerning blood type because defendant denied ownership of the coat. As a result the prosecutor felt that evidence as to blood type was moot.

Here, defendant argues that such evidence as to blood type was not moot and asserts the prosecutor was never in a position to prove the type of defendant's blood. If the prosecutor, in his opening statement stated facts, having reason to believe such facts could not be proved, that would be evidence of bad faith. State v. McDonald, supra. If defendant had a basis for this assertion, he should have presented it to the trial court. He did not do so.

There is nothing in the record that bears on the question of bad faith, other than the prosecutor's explanation. His explanation, that he felt the evidence was moot, certainly does not establish bad faith regardless of whether, in fact, evidence of blood type was moot.

*Cross-examination as to defendant's misconduct.*

Defendant raises various issues under this point. The issues, and our answers, follow.

(a) Defendant's wife was called as a defense witness. She testified on direct examination that on the evening of the assault defendant's brother underwent surgery for a broken jaw and that she, along with the defendant, was visiting the brother in the hospital. Defendant asserts that during the cross-examination of his wife the prosecutor asked "* * * several

questions concerning the defendant's prior acts of misconduct. * * *" This contention does not accord with the record.

■ The record shows one objection to the cross-examination of defendant's wife. The question to which objection was made reads: "Do you know, Mrs. Torres, how Carl Torres sustained this broken jaw for which he underwent surgery on the evening of July 18?" The trial court sustained defendant's objection to the question and at this point it was not answered. Since the question wasn't answered, the issue is whether the asking of the question, in itself, was prejudicial to defendant. The jury was instructed that in deciding the case, they were not to consider testimony that had been ruled out and were not to conjecture what would have been the answer to questions which the court ruled could not be answered.

Since the question was asked and answered by defendant, we cannot say that the question to his wife, in itself, was prejudicial. But if prejudicial, the admonishing instruction cured the prejudicial effect. State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct.App.1969), cert. denied 80 N.M. 731, 460 P.2d 261 (1969), and cases therein cited.

■ (b) Defendant was asked how his brother received the injuries for which he was being treated. His objection was overruled. His answer was he had had a fight with his brother and his brother's jaw was broken during the fight. Defendant contends it was improper to permit him to be cross-examined as to this misconduct. We disagree. Section 20-2-4, N.M.S.A. 1953 not only authorizes such questioning but also authorizes questions as to specific acts of misconduct. See State v. Hargrove, 81 N.M. 145, 464 P.2d 564 (Ct.App.), decided January 9, 1970, and cases therein cited; State v. McFerran, supra.

■ (c) Defendant contends the question to him should have been framed in a way to call for a "yes" or "no" answer. He asserts the question to him, asking *how*

his brother received a broken jaw, was in improper form. We do not consider this issue since no objection as to form was made in the trial court. The issue is not properly before us because it is raised here for the first time. State v. Anaya, 81 N. M. 52, 462 P.2d 637 (Ct.App.), decided December 5, 1969.

■ (d) Chief Detective Baca of the Bernalillo County Sheriff's Department, defendant's superior officer, testified as a defense witness. On cross-examination he was asked about defendant's "* * * reputation for being a fighter. * * *" Defendant contends the question was improper because it was a question put to a *non-defendant witness* concerning prior misconduct by the *defendant*. The contention overlooks the direct testimony of the witness and misconstrues the question asked.

On direct examination, Detective Baca was asked about defendant's reputation for truth and veracity in the community. His answer: "For being a police officer, I would say it's medium." The witness also testified that defendant was a "good officer" and told the truth.

The cross-examination question was proper. It pertained to the direct examination and was directed to contradicting or rebutting the testimony that defendant was a good officer. State v. Garcia, 78 N.M. 136, 429 P.2d 334 (1967); State v. Wilcoxson, 51 N.M. 501, 188 P.2d 611 (1948).

Further, the question was directed to the reputation of defendant as to misconduct. State v. Hawkins, 25 N.M. 514, 184 P. 977 (1919) states:

"* * * where a witness has testified as to the general reputation of the accused, it is competent to inquire of him, on cross-examination, as to whether he has heard reports of particular instances which are inconsistent with the reputation to which he has testified and the character which he has attributed to him. * * *"

See State v. McKinzie, 72 N.M. 23, 380 P. 2d 177 (1963).

(e) In arguing the issue disposed of under (d), defendant refers, generally, to questions put to Detective Baca on cross-examination. The only specific transcript reference is to the question discussed under (d). Thus, defendant, apart from this general reference to "questions" has failed to point out the other questions he deems erroneous. See § 21–2–1(15) (16), sub-paragraphs (d) (iii) and (e), N.M.S.A. 1953 (Supp.1969). Nevertheless, we have reviewed the cross-examination of Detective Baca and are of the opinion that other questions put to the witness about the defendant were either (1) permissible under State v. Hawkins, supra, or (2) not objected to, see State v. Garcia, supra.

### Impeachment of Patsy.

██ Patsy testified for the State during the case-in-chief. The defense called a probation officer who, on direct examination, testified that Patsy did not have a good reputation for telling the truth. Defendant contends that the State, in cross-examining the probation officer, impermissibly impeached Patsy. Defendant also contends that he was not permitted to impeach Patsy by showing specific acts of misconduct on her part. These contentions center about the probation officer's file on Patsy.

The cross-examination was directed to the basis of the probation officer's testimony as to Patsy's reputation. The answers were not at all those the prosecutor was seeking because the probation officer gave specific sources for his reputation testimony. With these unfavorable answers, the prosecutor then shifted his ground. The probation officer was asked if the folder he was holding contained his records on Patsy. He said that it did. He was then asked to look through the records and show the prosecutor "* * * where it says, Patsy Mora * * * does not tell the truth. * * *" At this point, because of the reference to the folder, defendant asked that it be marked as an exhibit. The trial court refused to permit this. The probation officer then testified that "It does say so, here." None of this cross-examination was an attempt to impeach Patsy; rather it was an attempt to rehabilitate her credibility by impeaching the probation officer.

Defendant claims the trial court erred in not allowing the folder and its contents to be marked as an exhibit and in not allowing him to present to the jury the specific acts of misconduct referred to in the report. Again, defendant misreads the record.

On redirect examination of the probation officer, defendant offered the probation records as evidence and the trial court indicated that under the circumstances, he would allow this to be done. With this favorable ruling, however, defendant did not put the report into evidence. Rather, he contented himself with referring to an aspect of the report which characterized Patsy as a pathological liar. Defendant made no attempt to prove specific acts of misconduct on Patsy's part other than by offering the probation records. The trial court ruled that the records would be admitted, but defendant did not have the records introduced as evidence.

Defendant's contentions under this point are without merit because they are not supported by the record.

On all issues except the line-up question the judgment of conviction is affirmed. Because the trial court failed to consider all of the evidence on the line-up issue, the case is remanded with instructions to vacate the judgment, determine the line-up issue and otherwise proceed consistently with this opinion.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.