519 P.2d 127

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Reies Lopez TIJERINA, Defendant-Appellant.**

**No. 9625.**

Supreme Court of New Mexico.

Nov. 2, 1973.

Rehearing Denied Dec. 5, 1973.

Harold H. Parker, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Jay F. Rosenthal, Sp. Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

MARTINEZ, Justice.

■ This case is before this Court pursuant to § 16–7–14(C)(2), N.M.S.A.1953 Comp. (Repl. Vol. 4, 1970) which authorizes the Court of Appeals to certify to the Supreme Court issues of substantial public interest which should be determined by the Supreme Court. The court of appeals considered that it was precluded by the provisions of § 16–7–11, N.M.S.A.1953 Comp. (Repl. Vol. 4, 1970) from calling in an additional judge or judges to decide this case in which the result was not concurred in by at least two judges. We have no disagreement with this reasoning because we have not seen fit to modify the operation of the statute by rule. Cf. Alexander v. Delgado, 84 N.M. 717, 507 P.2d 778 (1973). It was thus impossible for that Court to proceed further.

The Court of Appeals did produce three opinions in its consideration of this case. State v. Tijerina, 84 N.M. 432, 504 P.2d 642 (1972). Judge Hernandez would have affirmed the appellant's conviction on all of the eighteen points raised by him in his brief, Judge Sutin would have reversed and remanded for a new trial on the issue of venue, while Judge Hendley would have reversed and remanded for discharge on the issue of collateral estoppel. This Court approves of the opinion written by Judge Hernandez and adopts it as its own.

We note the opinion of Judge Sutin, State v. Tijerina, 84 N.M. at 444. It consists mainly of attacking our opinion in Valdez v. State, 83 N.M. 720, 497 P.2d 231 (1972). There seems to be an element of confusion between whether our opinion states the law and whether Judge Sutin agrees with it. Our concern is with the former. Judge Sutin mentions that a petition for certiorari to the Supreme Court of the United States was then pending. That petition, however, was denied on December 18, 1972. The opinion offered by Judge Sutin has no merit.

The opinion of Judge Hendley deals primarily with the issue of collateral estoppel

which is correctly dealt with by Judge Hernandez. However, the following is offered as a supplement to Judge Hernandez' opinion and a clarification of the collateral estoppel issue.

■ The United States Supreme Court has announced that the Fifth Amendment guarantee against double jeopardy is enforceable against the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969). It has also held that collateral estoppel is a part of the guarantee against double jeopardy. Ashe v. Swenson, 397 U.S. 346, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. Therefore, the question involved before this Court is whether or not the State of New Mexico has violated this guarantee in its second prosecution of the defendant for the crimes of assault with intent to commit a violent felony in violation of § 40A–3–3 N.M.S.A.1953 Comp. (2d Repl. Vol. 6, 1972), and false imprisonment, in violation of § 40A–4–3 N.M.S.A.1953 Comp. (2d Repl. Vol. 6, 1972).

The United States Supreme Court has pointed to the following guideline in deciding collateral estoppel questions:

"The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant mat-ter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 240 [, 92 L. Ed. 341]."

Ashe v. Swenson, 397 U.S. 436, 444, 90 S. Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970).

■ The United States Supreme Court in Ashe v. Swenson, supra, did not apply the "same transaction" test which would prohibit the piecemeal prosecution of multiple crimes arising out of the same transaction. Nor did it apply the "same evidence" test which would prohibit a second prosecution only when the matter set out in the second indictment would have been sufficient to secure a conviction on the first. What the court did adopt was a test that looked to all the relevant matters of the trial, and sought to determine whether or not the jury, in reaching its verdict in the first trial, necessarily or actually determined the same issues which the State attempts to raise in the second trial. Therefore, the test proposed in Ashe v. Swenson, supra, will be utilized by this Court in considering whether or not the second trial and convictions violate the Fifth and Fourteenth Amendments' protection against double jeopardy.

In the first trial, the defendant was accused of falsely imprisoning and kidnapping Dan Rivera, not Pete Jaramillo. Although the defendant was indicted for the same criminal violation in both trials, the victims of the false imprisonment charges differed. Similarly, the defendant, in the first trial, was accused of assault on a jail and not assault with intent to commit a felony. An assault on a jail refers to an inanimate and insensate object as its victim. § 40A–22–18, N.M.S.A.1953 Comp. (2d Repl.Vol. 6, 1972) provides:

"Unlawful assault on any jail consists of any person or group of persons assault-

ing or attacking any jail, prison or other public building or place of confinement of prisoners held in lawful custody or confinement."

On the other hand, assault with intent to commit a felony refers to a person as the victim, one who is presumably animated and sensate. § 40A–3–3, N.M.S.A.1953 Comp. (2d Repl. Vol. 6, 1972) provides:

"Assault with intent to commit a violent felony consists of any person assaulting another with intent to kill or to commit any murder, mayhem, rape, robbery or burglary."

On its face, it is unquestionably true that the charge of assault with intent to commit a felony requires the jury to consider facts not required in the first trial. Therefore, the conviction of assault with intent to commit a felony on Eulogio Salazar in the second trial is not the same charge as assault on a jail.

The jury in the first trial could have acquitted the defendant of kidnapping and false imprisonment of Dan Rivera while in the second trial the jury could have found him guilty of false imprisonment of Pete Jaramillo simply based on the evidence. In the first trial, Rivera did not testify that the defendant ordered him into the Commissioner's room, or that anyone ordered him to leave it. He even testified that he did not blame the defendant for anything, that he did not know whether he felt that he had been kidnapped, and that no one forced him to open the jail door. Therefore, the jury, on the evidence, could have acquitted the defendant of all three charges.

The jury in the second trial found the defendant guilty of shooting Eulogio Salazar while in the first trial the jury acquitted him of assault on a jail. There is no inconsistency in the verdict if we consult the testimony of Mr. Salazar. Salazar did not state in his deposition that he held the defendant blameless. In fact, he testified that Mr. Tijerina shot him as he was at-

tempting to escape through a window. Furthermore, Mr. Salazar's deposition was not admitted into evidence at the first trial so it is impossible that the jury necessarily or actually considered it at that time.

A similar examination of the evidence can be made concerning the charge of false imprisonment of Peter Jaramillo. The first trial's general verdict of acquittal establishes only the conclusion that the defendant did not falsely imprison Dan Rivera, not that he did not falsely imprison Jaramillo. These charges are completely separate and involve different parties.

The defendant is arguing that the State should be precluded by reason of the acquittals in the first trial from considering (1) whether the defendant shot Eulogio Salazar with intent to commit a felony and (2) whether the defendant falsely imprisoned Pete Jaramillo against his will. The guideline provided in Ashe v. Swenson, supra, is whether a jury at the first trial could have granted its acquittals on any grounds other than the grounds that the defendant neither shot Salazar nor imprisoned Jaramillo. Unlike the defendant in Ashe v. Swenson, supra, Tijerina did not plead an alibi defense. Therefore, when the jury acquitted Tijerina of all three charges, it did not necessarily conclude that he was not present at the jail that day, and thus did not commit any crimes. The jury simply concluded that he was not guilty of the crimes alleged.

In State v. Richardson, 460 S.W.2d 537 (Mo.1970), the defendant was convicted of assault with intent to maim without malice and he appealed. The Supreme Court of Missouri reversed. The Court determined that where the act toward the commission of attempted robbery was the identical assault upon which the charge of assault with intent to maim without malice was based, and where defendant had been convicted of attempted robbery, the subsequent prosecution for assault with intent to maim violates the rule against double jeopardy. In that case, the acts constituting the assault with a knife were the same acts

which gave rise to the charge of attempted robbery. The parties were the same and the acts were identical.

█ In the instant case, neither the parties involved nor the acts constituting the various crimes are the same. Numerous crimes were committed by the defendant against a number of parties. Certainly, a person may by one act violate more than one statute or commit more than one offense. Pifer v. United States, 158 F.2d 867 (4th Cir. 1946), certiorari denied, 329 U.S. 815, 67 S.Ct. 636, 91 L.Ed. 695 (1947). If that is true, then certainly a person may by many acts violate more than one statute and commit more than one crime. The State of New Mexico is not separating a single crime and prosecuting it in parts. Certainly, the charge of assault against a jail cannot be considered the only act occurring on June 5, 1967 and, therefore, the only crime committed. That reasoning is patently erroneous.

The defendant contends that the charges involved in the second trial cannot be reconciled with his acquittal of assault on a jail in the first trial. An examination of the instructions to the jury in reference to the assault on the jail will prove helpful.

"*No. 16* The statute of New Mexico on which the charge of assault on jail is based reads as follows:

Unlawful assault on any jail consists of any person or group of persons assaulting or attacking any jail, prison or other public building or place of confinement of prisoners held in lawful custody or confinement.

*No. 17* The essential elements of the offense of assault on jail, as charged in the information, are as follows:

1. That the defendant unlawfully assaulted or attacked the Rio Arriba County Courthouse and jail contained therein.

2. That prisoners were in lawful custody or confinement in said jail.

3. That the defendant did such an act or acts with the purpose and intent of procuring the escape of any of such prisoners.

4. That said act or acts occurred in Rio Arriba County, New Mexico, on or about the 5th day of June, 1967.

If each and all of the material allegations of the charge of assault on jail as just outlined to you have been proved to your satisfaction and beyond a reasonable doubt, then you should find the defendant guilty as charged of assault on jail; but, on the other hand, if you have a reasonable doubt as to any one or more or all of such material allegations, then you should find the defendant not guilty of the charge of assault on jail.

*No. 19* Assault Or Attack On Jail means to enter or endeavor to enter a jail by force and with violence.

*No. 24* The Court instructs the Jury that the Defendant in order to be guilty of the charge of assault on a jail must in fact have intended, either himself, or through assisting others, to assault either the jail itself in the Tierra Amarilla Courthouse or the Tierra Amarilla Courthouse because it contained a jail.

Moreover, in order to find Defendant guilty of said charge of assaulting a jail, you must further find that said defendant either himself, or by assisting others, to assault either the jail itself in the Tierra Amarilla Courthouse or the Tierra Amarilla Courthouse because it contained a jail.

Moreover, in order to find Defendant guilty of said charge of assaulting a jail, you must further find that said defendant either himself, or by assisting others, intended to release, molest, or in some other way inconsistent with their custody at the time, deal with the prisoners in said jail.

Finally, you are instructed that the mere fact that a jail happened to be con-

tained within the Tierra Amarilla Courthouse is not sufficient, unless acts of defendant are present directly and intentionally aimed at said jail."

In acquitting the defendant of this charge, the jury had to examine a number of issues: (1) did the defendant unlawfully assault the jail; (2) were there prisoners inside the jail; (3) did defendant's act have the purpose and intent of effecting any prisoner's escape; and (4) did defendant's act occur in Rio Arriba County on June 5, 1967. The essential question seems to be whether or not the defendant had acted with the purpose and intent to assault the jail. The jury's finding that defendant's acts did not constitute an assault on the jail does not necessarily or actually determine that he did not perform any acts, and does not determine that he did not perform other acts for other purposes. Certainly, it is not an exercise in pettifoggery to limit a jury instruction to the matter contained therein. What the jury determined in the first trial was that the defendant did not assault a jail, and nothing more.

In United States v. Drevetzki, 338 F. Supp. 403 (1972), the federal district court determined that the jury could not have acquitted the defendant of theft without considering whether or not the defendant lied in his testimony. He denied that he had ever made an incriminating statement to a government agent. Because of this express denial, the issue of the defendant's prevarication could not be relitigated in an action for perjury as it would violate the Fifth Amendment. In that case, the acquittal was inseparably intertwined with the issue of the defendant's veracity regarding the statement to the agent. Thus, any charge of perjury in a later case would violate the prohibition against double jeopardy.

■ In the instant case, however, there was no question of acquittal intertwined with an issue of veracity. There was no question of acquittal intertwined with any issue other than the charges alleged against the defendant in the first trial. Clearly, these charges are not being relitigated. The issues determined in the first trial were that Tijerina did not assault the jail, and that he did not falsely imprison or kidnap Rivera. The jury did not have occasion to consider the charges of assault with intent to commit a felony on Salazar, and false imprisonment of Jaramillo, because those charges and particular acts substantiating such charges were not introduced by the State. Taking into consideration the test established in Ashe v. Swenson, supra, we believe that a rational jury could have found Tijerina guilty of assault on Salazar and false imprisonment of Jaramillo, had such charges been alleged in the first trial. However, they were not so alleged in the first trial. Moreover, the testimony involved in the first trial does not treat these crimes. Thus, the jury was not bound to pass upon those charges. Therefore, the charges against the defendant in the second trial pass the Ashe v. Swenson test.

It should not be inferred from this opinion that this Court intends to encourage or approve piecemeal prosecution. Such disorderly criminal procedures involve a myriad of problems which threaten the existence of our judicial system. The risk of prejudice to the accused, and the waste of time inherent in multiple trials, both perpetuate delays in the judicial process and unconscionable expenditures of public funds, all of which could be avoided by prosecutors getting their facts straight, their theories clearly in mind and trying all charges together.

The judgment and sentence of the trial court is affirmed.

It is so ordered.

McMANUS, C. J., and STEPHENSON, J., concur.