558 P.2d 1151
STATE of New Mexico,
Plaintiff-Appellee,

v.

Jacob B. ARMIJO, Defendant-Appellant.

No. 2532.

Court of Appeals of New Mexico.

Dec. 14, 1976.

Jan A. Hartke, Acting Chief Public Defender, Don Klein, Acting Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Raymond Hamilton, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

The fourteen-count indictment charged defendant with various heroin offenses. He was convicted of three of the counts and apparently acquitted of two of the counts at a trial in January, 1976. The appeal of the three convictions, *State v. Armijo,* (Ct. App.) No. 2440, was dismissed by memorandum decision March 16, 1976. This appeal involves defendant's conviction of the remaining nine counts in April, 1976. The issues are: (1) sufficiency of the evidence, (2) evidence of acts and declarations of a co-conspirator, (3) aiding and abetting, and (4) double jeopardy.

*Sufficiency of the Evidence*

The heroin offenses involved in this appeal are based on the activities of Lincoln Blea. The offenses were trafficking, either by distribution of heroin or possession of heroin with intent to distribute. Section 54–11–20, N.M.S.A.1953 (Repl. Vol. 8, pt. 2, Supp.1975). Defendant's conviction of these offenses was based on a theory of derivative liability; that Lincoln Blea's offenses were committed in furtherance of a conspiracy of which defendant was a member. See *State v. Armijo*, 90 N.M. 10, 558

P.2d 1149 (Ct.App.) decided December 14, 1976.

Lincoln Blea's offenses occurred from March 18 through March 28, 1975. The State alleged that defendant and Lincoln Blea conspired to traffic in heroin between March 18 and April 9, 1975. Defendant recognizes that the State proved a conspiracy existed on April 9, 1975 but asserts the evidence is insufficient to show an existing conspiracy during the time covered by Lincoln Blea's offenses—March 18 through March 28. We disagree.

On March 9, 1975 a state agent telephoned "Jacob" at defendant's unlisted telephone number. The voice answering the telephone call was recognized by the agent to be the voice of defendant. The agent informed defendant that Diane Blea had been arrested for a parole violation and asked defendant if he could do anything to help her out. Defendant said he could not help Diane. The agent stated that he had been purchasing his supply of heroin from Diane and this source had been interrupted because Diane was in jail. See *State v. Armijo*, 89 N.M. 90, 558 P.2d 1149 (Ct. App.) supra. The agent asked defendant "if I could meet him and so I could purchase heroin from him. . . . He then told me that he didn't know me and I once again told him, I asked him, hadn't Diana [sic] Blea told him who I was, that I had been purchasing heroin from him through her and he said, yes, but I don't know you. I then told him to check with several people to verify that I was okay to sell heroin to and I named several people."

The agent gave defendant a list of names, including that of Lincoln Blea, and told defendant to check "that it was okay for him to sell heroin to me." Defendant said " 'I will do that,' " and then hung up. Defendant voiced no objections to what the agent wanted to do. Shortly after this telephone conversation, defendant's unlisted number was changed. The agent knew this before he met with Lincoln Blea.

The agent went to Lincoln Blea's house about 9:50 p. m. on March 18, 1975 where he observed Lincoln Blea cutting heroin and

selling 50 caps to "Willie". At 10:05 p. m. that night, the agent purchased heroin from Lincoln Blea. The agent also made purchases from Lincoln Blea, at his home, on March 19, 21 and 28, 1975. During the course of these transactions the agent importuned Lincoln Blea to introduce the agent to defendant. "[T]he only hesitation there, was whether or not Jacob could see us together at least twice before attempting introduction."

Subsequently, defendant was given opportunity to view the agent and a transaction was arranged for a $6,000 sale. This prearranged sale occurred on April 9, 1975; defendant supplied the heroin which Lincoln Blea sold to the agent.

In the agent's dealings at Lincoln Blea's house, the agent never saw any paraphernalia for using heroin and the indications from Lincoln Blea were that he was not a user.

Common design is the essence of a conspiracy. "A mutually implied understanding is sufficient so far as combination or confederacy is concerned, and the agreement is generally a matter of inference deduced from the facts and circumstances, and from the acts of the person accused done in pursuance of an apparent criminal purpose." *State v. Deaton,* 74 N.M. 87, 390 P.2d 966 (1964).

█ The circumstances of the telephone call, the dealings with Lincoln Blea thereafter, the absence of paraphernalia and indications of use on Lincoln Blea's part, Lincoln Blea's willingness to introduce the agent to defendant, the arrangements for defendant to view the agent and the April 9th transaction were substantial evidence of a conspiracy between defendant and Lincoln Blea to traffic in heroin during the March 18 to March 28 time period.

A second contention under this issue involves the distribution of 50 caps of heroin to "Willie". One of the defendants named in the indictment was Willie Baca who was alleged to be a co-conspirator. Since defendant's convictions are based on a theory of conspiracy, defendant asserts that his guilt requires a conclusion of mutual agen-

cy and accountability, and his guilt in connection with the 50-cap sale is necessarily predicated on a theory of distribution to himself. Defendant asserts this is not a crime. On this basis, defendant asserts there is no evidence to support conviction for the count involving the 50-cap sale.

We do not reach the merits of this contention. The evidence shows a sale of 50 caps to Willie, but there is nothing indicating that Willie was the defendant Willie Baca. In addition, there is nothing showing that Willie Baca was in fact a co-conspirator. The record does not support this second contention.

*Evidence of Acts and Declarations of a Co-Conspirator*

Defendant asserts that acts and declarations of Lincoln Blea concerning defendant were improperly admitted. Defendant states that "[a]dmission of acts of a co-conspirator, or his declarations, is permissible only upon proof of a prima facie case of conspiracy." He contends that admission of the facts and declarations of Lincoln Blea before prima facie evidence of a conspiracy was error.

The cases cited by defendant refer only to prima facie proof of the conspiracy before *statements* of a co-conspirator are admissible. *United States v. Olivia,* 497 F.2d 130 (5th Cir. 1974); *United States v. Spanos,* 462 F.2d 1012 (9th Cir. 1972). New Mexico decisions, however, refer to *acts* as well as statements of a co-conspirator. See *State v. Orfanakis,* 22 N.M. 107, 159 P. 674 (1916); *Territory v. Neatherlin,* 13 N.M. 491, 85 P. 1044 (1906); Compare, *State v. Farris,* 81 N.M. 589, 470 P.2d 561 (Ct.App. 1970). We do not seek to reconcile the decisions or determine the extent of the New Mexico rule. Rather, we assume the rule applies to acts and declarations of a co-conspirator.

█ Defendant's contention involves the order of proof. The trial court "has wide discretion in supervising the order of proof in a conspiracy case." *United States v. Turner,* 528 F.2d 143 (9th Cir. 1975); see *United States v. Calaway,* 524 F.2d 609 (9th

Cir. 1975), cert. denied, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976). The issue is not, therefore, whether acts and declarations of Lincoln Blea were admitted *prior* to prima facie proof of a conspiracy. The issue is whether there was prima facie proof of a conspiracy apart from those acts and declarations.

The evidence required is evidence sufficient to make a prima facie case; evidence which would support a finding. *United States V. Calaway,* supra; *United States v. Olivia,* supra. Evidence making a prima facie case of conspiracy in this case was the telephone conversation followed by the agent's purchases of heroin from Lincoln Blea, the agent's requests to meet with defendant, the agent being exposed to defendant's view, the agent's arrangements for the $6,000 purchase, defendant's arrival at the prearranged place for the $6,000 transaction, the observation of the "bathroom" meeting of defendant and Lincoln Blea followed shortly thereafter by Blea selling $6,000 of heroin to the agent, and defendant having the marked money in his possession when arrested.

*Aiding and Abetting*

Defendant states that he objected to submission of evidence of conspiracy unless aiding and abetting were charged and there is no instruction on aiding and abetting. His claim is that unless aiding and abetting and conspiracy were jointly prosecuted at the trial or unless the prosecutor disproved aiding and abetting defendant could not be convicted of conspiracy. Defendant cites no authority in support of this contention; his view is that statutory provisions on conspiracy and aiding and abetting (§§ 40A–28–2 and 40A–1–14, N.M.S.A.1953 (2d Repl. Vol. 6)) preclude a finding of guilt on a theory of derivative liability.

Defendant did not raise this claim in the trial court; the only reference to aiding and abetting came in defendant's objection to admission of acts of Lincoln Blea because neither conspiracy nor aiding and abetting were charged. N.M.Crim. App. 308. On the merits, however, defend-

ant, as a conspirator, can be guilty of the substantive offense on a theory of derivative liability, *State v. Armijo,* (Ct.App.) 558 P.2d 1149, supra; acts and declarations of co-conspirators may be admitted whether or not conspiracy is directly charged, *Territory v. Neatherlin,* supra; aiding and abetting and conspiracy are distinct and separate concepts, *State v. Ochoa,* 41 N.M. 589, 72 P.2d 609 (1937).

*Double Jeopardy*

One of the three counts of which defendant was convicted in January, 1976, was a count charging conspiracy. (See opening paragraph of this opinion.) The appeal was dismissed prior to the convictions now involved in this appeal.

Defendant recognizes that the conspiracy and the completed offenses are separate offenses and conviction of both does not amount to double jeopardy. *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); see *State v. Tanton,* 88 N.M. 333, 540 P.2d 813 (1975).

Without citation of supporting authority, defendant claims that his conviction of the nine counts involved in this appeal amounted to double jeopardy because he had already been convicted of conspiracy and was serving his sentence for the conspiracy conviction prior to trial of the nine counts. He points out that the basis for guilt on the nine counts was as a co-conspirator. He states: "Thus, no act of the defendant other than that for which he was already being punished exists, upon which to ground liability."

*Pinkerton v. United States,* supra, answers defendant's contention:

"The common law rule that the substantive offense, if a felony, was merged in the conspiracy, has little vitality in this country. It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. . . . A conviction for the conspiracy may be had though the substantive offense was completed. . . .

And the plea of double jeopardy is no defense to a conviction for both offenses.

\*   \*   \*   \*   \*   \*

"Each conspirator instigated the commission of the crime. The unlawful agreement contemplated precisely what was done. It was formed for that purpose. The act done was in execution of the enterprise. . . . If that [the required overt act] can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense."

Although defendant had been convicted and was being punished for his conspiracy at the time of his trial on the nine substantive counts involved in this appeal, he has not been placed in double jeopardy by being convicted and sentenced on the nine substantive counts.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.