575 P.2d 954

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Lloyd Wayne JACOBS, Defendant-Appellant.**

**No. 3169.**

Court of Appeals of New Mexico.

Jan. 31, 1978.

Certiorari Denied Feb. 27, 1978.

Barbara Nobel Farber, Santa Fe, Michael T. Garrett, Clovis, for defendant-appellant.

Toney Anaya, Atty. Gen., Suzanne Tanner, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant, another male, and a female were charged with conspiracy to obtain Preludin, a controlled substance, by misrepresentation, fraud or forgery. Convicted, defendant appeals. We discuss: (1) mug shots to prove identity; (2) evidence of conspiracy and the coconspirator rule; (3) hearsay and the right of confrontation; and (4) motion to amend the docketing statement.

It is uncontradicted that two forged prescriptions were used in attempts to obtain Preludin from various pharmacies in Clovis. All the attempts were unsuccessful.

### Mug Shots to Prove Identity

State's Exhibit No. 3 consists of two photographs of an adult male; one is a front view, the other is a profile. Information appearing in both photographs shows they were taken at the Clovis police department on February 25, 1977.

The photographs show a long-haired, bearded person wearing what appears to be a T–shirt. The photographs are consistent with the testimony of various witnesses describing the male who attempted to purchase Preludin. In addition, various witnesses stated that the male represented in the photographs was the male attempting to make the purchase.

Defendant claims the admission and use of the photographs at trial was error. He argues: (a) a tainted identification; the "in-court identification based on a 'mug shot' photographic identification which was so suggestive that it could only encourage an irreparable misidentification of the Defendant constitutes a violation of Appellant's entitlement to due process"; (b) use of the mug shots tended to strip defendant of his presumption of innocence and suggest prior criminal activity; and (c) use of the mug shots had a clearly prejudicial impact upon the jury, and permitting their use was an abuse of the trial court's discretion.

■ All of the above claims disregard how the photographs were used at trial. The trial court pointed out that "the appearance of the defendant has drastically changed from the time he was here three weeks ago as a witness." Pharmacist Bell, asked by the female to fill one of the forged prescriptions, testified that two long-haired, bearded men entered his store with the female. He could not identify anyone in the courtroom as being one of the men. However, he did identify Exhibit No. 3 as the picture of one of the men who came in with the female. Specifically, Bell's testimony did not include any in-court identification of defendant; his testimony went no further than to identify a photograph. There is nothing suggestive of misidentification in the testimony that went no further than stating the exhibit was the picture of the man who entered the store.

Use of the exhibit did not destroy any presumption of innocence or suggest *prior* criminal activity. The information appearing in the photographs is consistent with the testimony of police witnesses that the photographs were taken after defendant's arrest on the charge for which he was being tried.

There was no abuse of discretion in admitting photographs showing defendant's appearance at the time of his arrest when defendant had drastically altered his appearance subsequent to arrest. The photographs confirmed the descriptions given by various witnesses and were relevant to the identity of the offender.

Admission of, and use of the photographs was not error. *State v. Mordecai*, 83 N.M. 208, 490 P.2d 466 (Ct.App.1971); see *State v. Cumbo*, 9 Ariz.App. 253, 451 P.2d 333 (1969). The mug shot discussion in *State v. Tapia*, 79 N.M. 344, 443 P.2d 514 (Ct.App. 1968) is not in point.

After receipt of testimony that the offender was the person portrayed in the photographs, the State established identity through evidence that the defendant was the person appearing in the photographs. Compare *State v. Miller*, 79 N.M. 117, 440 P.2d 792 (1968).

*Evidence of Conspiracy and the Coconspirator Rule*

The defense put on no evidence; it rested at the close of the State's case-in-chief. Defendant then moved for a directed verdict which was denied. On appeal, defendant asserts this was error because the evidence of conspiracy was circumstantial and this circumstantial evidence was insufficient to establish defendant's guilt beyond a reasonable doubt. This claim not only disregards trial court proceedings, it disregards applicable New Mexico law.

■ Defendant's argument concerning circumstantial evidence is that it fails to exclude every reasonable hypothesis of innocence. The circumstantial evidence rule is no more than a special application of the rule concerning reasonable doubt; it is not independent of the question of whether there is substantial evidence to support the verdict. Even if the evidence is circumstantial, if the circumstantial evidence substantially supports the verdict, the verdict will not be set aside. *State v. Adams*, 89

N.M. 737, 557 P.2d 586 (Ct.App.1976); see *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977).

The evidence of conspiracy is not entirely circumstantial. There is testimonial, *State v. Hinojos*, 78 N.M. 32, 427 P.2d 683 (Ct. App.1967), or direct, see U.J.I.Crim. 40.00, evidence of conspiracy. This testimony came from the female and, in itself, substantially establishes the conspiracy.

■ Defendant's appellate claim is that the female's testimony should not be considered until other evidence established a prima facie case of conspiracy. See *State v. Armijo*, 90 N.M. 12, 558 P.2d 1151 (Ct.App. 1976). No such claim was raised in the trial court. The motion for directed verdict asserted only "that the State has failed to prove its case as charged." This motion was properly denied because the female's testimony established the conspiracy and defendant made no objection to this testimony. The motion for directed verdict did not assert that, if the female's testimony were not considered, the evidence of conspiracy was insufficient. This issue not having been raised in the trial court, it is not before us for review. *State v. Orfanakis*, 22 N.M. 107, 159 P. 674 (1916).

On the merits, the appellate claim shows a misunderstanding of the coconspirator rule. The rule involves the admissibility of declarations of a coconspirator. *State v. Armijo*, supra, questioned, but did not decide, whether the rule also applied to "acts" of a coconspirator. The rule, its reason, and the exclusion of "acts" from the rule is discussed in *Anderson v. United States*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974) as follows:

> The doctrine that declarations of one conspirator may be used against another conspirator, if the declaration was made during the course of and in furtherance of the conspiracy charged, is a well-recognized exception to the hearsay rule which would otherwise bar the introduction of such out-of-court declarations. . . . [T]he requirement that out-of-court declarations by a conspirator be shown to have been made while the conspiracy charged was still in progress and in furtherance thereof arises only because the declaration would otherwise be hearsay. The ongoing conspiracy requirement is therefore inapplicable to evidence, such as that of *acts* of alleged conspirators, which would not otherwise be hearsay. Thus . . . acts of one alleged conspirator could be admitted into evidence against the other conspirators, if relevant to prove the existence of the conspiracy
> . . . .

■ The coconspirator rule was designed to meet the problem of hearsay. Thus, Evidence Rule 801(d)(2)(E) defines as "not hearsay" a statement made by a coconspirator of a party during the course and in furtherance of the conspiracy.

■ *State v. Armijo*, supra, recognizes that there must be prima facie proof of the conspiracy independent of testimony admissible under the coconspirator rule. Annot., 46 A.L.R.3d 1148, § 2[a] at page 1155 points out, consistent with *Anderson v. United States*, supra, that the coconspirator rule applies to extrajudicial (out-of-court) declarations of a coconspirator. The coconspirator rule does not apply to the in-court testimony of a conspirator who testifies about his own activities. *State v. Robinson*, 84 N.M. 2, 498 P.2d 694 (Ct.App.1972). Compare *State v. Armijo*, supra, where the issue involved the admissibility of an agent's testimony concerning conspirator Blea when the testimony was being offered against defendant as a coconspirator.

■ In this case, the female's in-court testimony was to the effect that she conspired with defendant and another to obtain the Preludin. Her in-court testimony as to what she did does not involve the coconspirator rule. Her testimony was independent evidence of the existence of the conspiracy.

The female testified as to certain acts of defendant which she observed—defendant filled out a prescription, signed the physician's name and handed the forged prescription to her. These "acts" did not involve the coconspirator rule; they were, however,

independent evidence of the existence of the conspiracy.

■ The female testified as to conversations between herself and the two men. These conversations were to the effect that the female was to go into a drug store and use a forged prescription to obtain Preludin, that she should not carry identification in case she "got caught".

To the extent these conversations involved declarations of defendant, the coconspirator rule applied. Under that rule the declarations of defendant would not be considered in determining the sufficiency of the evidence unless there was prima facie proof of the conspiracy independent of defendant's declarations. Both the female's testimony as to the conspiracy and her testimony as to defendant's acts were such proof.

*Hearsay and the Right of Confrontation*

■ The female was arrested after attempting to obtain Preludin from Pharmacist Bell by using a forged prescription. Subsequently, defendant unsuccessfully attempted to obtain Preludin from Pharmacist Ingle. In this attempt defendant used a prescription similar to the forged prescription he used in an attempt to obtain Preludin at still another pharmacy.

During the direct examination of Ingle, over defendant's objection, the trial court permitted testimony as to a conversation between Bell and Ingle. The substance of this conversation was that Bell asked Ingle if Ingle had Preludin, that Ingle said he would check and see but advised Bell not to fill the prescription after Bell said he did not know the person trying to obtain Preludin. "And he called me back later and said that it was forged out of Albuquerque." The evidence indicates that defendant's attempt to obtain Preludin from Ingle occurred subsequent to this conversation.

The prosecutor informed the trial court that "the testimony of the witness Ingle as to what Mr. Bell stated to him was not offered for the truth of the matter asserted, but only to show reason for Mr. Ingle's

actions at the time he was presented with the prescription in order to give relevance to his conduct." Ingle's conduct was: (a) to refuse to fill the prescription, (b) to call the police, and (c) to send an employee to try to get the license plate number of defendant's car.

Several times defendant objected that testimony as to Bell's conversation with Ingle was hearsay. Defendant also pointed out that Bell had previously testified as a witness and had been excused.

If the witness Bob Bell had not been dismissed then in turn I can say we would have the opportunity to bring him back before this Court for cross examination, but due to the fact that he has been dismissed we have no witness to put on to this trial to rebutt [sic] what this man says that Mr. Bell said to him. To that extent it is hearsay and it should be excluded and we so move.

To the extent defendant's objection was that the conversation was hearsay, the objection was meritless. The conversation was not offered for the truth of its content; accordingly, it was not hearsay. Evidence Rule 801(c); *State v. Padilla*, 90 N.M. 481, 565 P.2d 352 (Ct.App.1977); *State v. Aragon*, 85 N.M. 401, 512 P.2d 974 (Ct.App. 1973). The fact that Bell had been excused as a witness did not make the testimony hearsay.

■ On appeal, defendant asserts the admission of Bell's conversation denied defendant the right to confront and cross-examine the witnesses against him. Defendant's objection, quoted above, is directed to a claim of hearsay and cannot fairly be said to have informed the trial court that a confrontation claim was being raised. However, this need not be decided because the appellate claim is that admission of Bell's conversation was fundamental error. We disagree with this claim.

The prosecutor offered the conversation testimony to show the reason for Ingle's actions when defendant attempted to obtain Preludin from Ingle. The situation is similar to an utterance by Bell, offered to show Ingle's state of mind as a result of the

utterance. See *Glass v. Stratoflex, Inc.*, 76 N.M. 595, 417 P.2d 201 (1966). Defendant clearly could cross-examine Ingle as to his state of mind and did so. The content of the conversation was not admitted for its truth. Since the truth of the content of the conversation is not involved, defendant's inability to cross-examine Bell as to the conversation does not involve the accuracy of the truth-determining process in a criminal case. There was no denial of the right of confrontation by admission of a conversation offered only to explain Ingle's actions. See *State v. Lunn*, 82 N.M. 526, 484 P.2d 368 (Ct.App.1971).

*Motion to Amend Docketing Statement*

The preceding issue, involving Ingle's testimony as to Bell's conversation was not raised as an issue in the docketing statement. Defendant's motion to amend the docketing statement to include this issue was denied as untimely. His brief claims this denied him due process of law. This point is not concerned with the merits of the issue; we decided the merits in the immediately preceding issue. This discussion is concerned only with the right to amend the docketing statement.

 N.M.Crim.App. 205 contemplates that, in most cases, the trial attorney will file the docketing statement. The trial attorney filed the docketing statement in this case and did not raise an issue concerning Bell's conversation with Ingle. The docketing statement did raise an issue concerning a conversation but this issue involved a police officer's testimony and a claim that what "Bell and/or Berry stated to him . . was hearsay". The motion to amend asserts this wording was a mix-up and the conversation with Ingle was the conversation intended. We accept that explanation. However, the issue listed in the docketing statement asserted only that the conversation was improperly admitted hearsay. This is consistent with our reading of defendant's objections at trial; that the objections went only to hearsay. The confrontation issue appears for the first time in the motion to amend.

The docketing statement was filed on August 15, 1977; the appeal was assigned to a limited calendar on August 18, 1977. The transcript was filed in this Court on October 4, 1977. On October 6, 1977, Barbara Nobel Farber entered her appearance for defendant. On October 11, 1977, Ms. Farber moved for an extension of time to file the brief-in-chief. The extension was granted through October 31, 1977. The motion to amend the docketing statement was filed on October 26, 1977.

The motion to amend was filed within the extension granted but after briefing time would have expired absent the extension. The motion came from counsel who had needed, and was granted, an extension because of her late appearance in the case. The motion to amend admits that the motion resulted from a review of the transcript and argues that the motion should be granted because trial counsel "did not have the benefit of the trial transcript" when the docketing statement was prepared.

The foregoing shows that the motion to amend is based on concepts contrary to the Criminal Appellate Rules. Under the rules, appellate issues are to be raised by the trial attorney in the docketing statement. The rules do not contemplate that new issues are to be raised by appellate counsel after picking through the transcript for possible error. When a new issue is sought to be raised after the briefing time provided by the rules has expired, the request is untimely.

 In asserting that denial of the motion to amend was a denial of due process, defendant relies on New Mexico Supreme Court cases involving violations of the rules. None of those decisions condone rule violations and none held there was a due process violation by requiring compliance with the rules. See *Melon v. State*, 90 N.M. 787, 568 P.2d 1233 (1977) and cases therein cited. Defendant does not claim that the rules themselves offend due process. Accordingly, requiring compliance with the rules is not a violation of due process.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.