606 P.2d 1105

**STATE of New Mexico,
Plaintiff-Appellant,**

v.

**Ira HARGE, Defendant-Appellee.**

**No. 3817.**

Court of Appeals of New Mexico.

Sept. 18, 1979.

Rehearing Denied Oct. 4, 1979.

Jeff Bingaman, Atty. Gen., Charlotte Hetherington Roosen, Ralph Muxlow II, Asst. Attys. Gen., Santa Fe, for plaintiff-appellant.

Edmund J. Lang, Raymond G. Sanchez, Albuquerque, for defendant-appellee.

## OPINION

HENDLEY, Judge.

Defendant was indicted on charges of arson and conspiracy to commit arson. The trial court (1) quashed the indictment for prosecutorial misconduct, (2) suppressed defendant's statements to fire investigators as a denial of his Fifth Amendment rights and (3) excluded statements made by a deceased co-conspirator to an unindicted co-conspirator. The State appeals and we reverse.

*Quashing the Indictment for Prosecutorial Misconduct*

The State submitted a bill to the grand jury charging defendant with arson, contrary to § 30–17–5, N.M.S.A.1978, and conspiracy to commit arson, contrary to § 30–28–2, N.M.S.A.1978. At the grand jury proceeding the following interchange took place between the grand jury foreman and the assistant district attorney, Mr. Gober.

> THE FOREMAN: Would it be feasible for the grand jury to ask when Ira Harge stated he was in Santa Fe on the weekend of the fire to have a witness corroborate his testimony?
>
> *       *       *       *       *       *
>
> MR. GOBER: Yes. As to his being in Santa Fe, I don't have to prove that he was in Santa Fe. He would probably want to do that, so where do we stand at this point?

> THE FOREMAN: . . . If we feel that there was a possible conspiracy by another individual other than the one that is being served the indictment is it feasible for this grand jury to call other witnesses?
>
> MR. GOBER: You can instruct anybody in the state to go check it out or any law enforcement official who is responsible to you. . . .
>
> *       *       *       *       *       *
>
> The second thing is, I don't know if you want to bring somebody before you and direct them to go check something out just tell them who the guy is and we will bring them in.

The grand jury returned a true bill against defendant on both charges. Defendant moved to quash the indictment on grounds of prosecutorial misconduct.

In granting the motion, the trial court apparently believed that the State should have adhered to the grand jury's request and produced a corroborating witness (although no reference to the existence of one is present in the record) and the district attorney should have informed defendant or his attorneys of the grand jury's request.

In dismissing the indictment against defendant, the trial court considered § 31–6–7, N.M.S.A.1978, and § 31–6–11(B), N.M.S.A. 1978. Section 31–6–7, *supra*, in pertinent part reads:

> . . . The district attorney shall attend the grand jury, examine witnesses, prepare indictments, reports and other undertakings of the grand jury.

Section 31–6–11(B), *supra*, states:

> The grand jury is not required to hear evidence for an accused person, but it is its duty to weigh all the evidence submitted to it, and when it has reason to believe that other competent evidence is available that may explain away or disprove a charge or accusation or that would make an indictment unjustified, then, it should order the evidence produced.

■ In *State v. Chance*, 29 N.M. 34, 221 P. 183 (1923), the Supreme Court held that,

although the grand jury statutes were written in the absolute, they were merely directory and for the guidance of the grand jury. However, the grand jury and the district attorney should endeavor to comply with them. Under *Chance, supra,* the courts are prohibited from inquiring into the sufficiency, legality, or competency of the evidence upon which the grand jury relied in returning its indictment.

■ However, this court may expressly review the actions of the district attorney for knowingly withholding exculpatory evidence or "evidence reasonably tending to negate guilt" from the grand jury to determine whether the defendant was denied due process. *State v. McGill,* 89 N.M. 631, 556 P.2d 39 (Ct.App.1976); *State v. Herrera,* 93 N.M. 442, 601 P.2d 75 (Ct.App.1979). While defendant here couches his argument in terms of prosecutorial misconduct, his claim is essentially one of due process.

In *McGill, supra,* defendant argued that he was denied due process because the prosecutor withheld from the grand jury exculpatory evidence that fingerprints found at the scene of two robberies did not belong to him. The prosecutor testified that prior to the grand jury presentation he did not know this fact; and, in any event, other positive identification of the defendant was presented. Defendant also argued that testimony by a detective that a robbery victim had identified him at a lineup, when, in fact, she had misidentified him physically but had identified him by his voice, was improperly withheld exculpatory evidence. The court concluded that neither action deprived defendant of fundamental fairness and, consequently, there was no denial of due process.

In *Herrera, supra,* this court found that the:

. . . due process requirement of presenting evidence tending to negate guilt is not to be determined on the basis of the prosecutor's subjective belief; rather, the claim is to be determined by objectively analyzing the withheld evidence to determine whether, in fact, it tended to negate guilt.

In the present case, the foreman asked Mr. Gober whether it was feasible to call a corroborating witness. Mr. Gober responded that the State did not need to prove defendant's whereabouts on the weekend and that, if the grand jury so desired, they were authorized to direct various State law enforcement officials to bring in potential witnesses or other persons for questioning.

■ We cannot say as a matter of law that Mr. Gober was withholding any exculpatory evidence. Nor can we say that Mr. Gober refused a request. The foreman was told he could instruct any responsible law enforcement official to bring in any person the grand jury wanted. No request was made.

Defendant further argues that had Mr. Gober informed him or his attorneys of the request for a corroborating witness, they would have provided one. *Chance, supra; McGill, supra ;* and *Herrera, supra,* do not require that a defendant be allowed to present his case. Instead, they only require the prosecutor to present exculpatory evidence if he has knowledge of it and to withhold it would deny defendant a fair trial.

Defendant cites *Johnson v. Superior Court of San Joaquin County,* 15 Cal.3d 248, 124 Cal.Rptr. 32, 539 P.2d 792 (1975) in support of his position. In *McGill, supra,* this court specifically declined to follow the *Johnson, supra,* reasoning.

The trial court erred in quashing the indictment. Since we are remanding this cause for trial, we answer the other issues which will necessarily arise during the trial. *Suppression of Defendant's Statement to Sheriff and Fire Marshall*

On the day after the fire at the Thunderbird Bar in Placitas, defendant went to the Sandoval County Sheriff's Office and made certain statements to Deputy James Gutierrez and Fire Marshall D. G. Dabbs. He later sought to suppress those statements on the grounds that he had not been given his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that his statements were invol-

untary as the product of an "in-custody" interrogation after he had become the focus of the arson investigation. The trial court granted defendant's motion to suppress.

Deputy Gutierrez testified that he responded to the original fire call as a routine matter. On the morning of the day after the fire he spoke with the assistant fire chief who suggested he speak to one David Brown about the fire. Upon speaking to Brown, Gutierrez learned that shortly before the fire Brown had held two men at gunpoint at the bar. This statement gave Gutierrez the impetus to call D. G. Dabbs, an investigator for the fire marshall's office, to determine the cause of the fire. Both Dabbs and Gutierrez went to the scene of the fire where defendant was also present. Dabbs testified that after his investigation, he believed the fire to have been caused by arson.

Gutierrez testified that later that day defendant went to the police station, although he could not clearly recollect whether defendant had come of his own accord or whether he had been requested to do so by Dabbs or himself. At the time of the statement Gutierrez testified that Dabbs believed the two men Brown had held at gunpoint were suspects, and both he and Dabbs believed Brown was a suspect. While Gutierrez could not state exactly when defendant became a suspect, he did state that he was not one at the time of the statement. At the time of the statement defendant was not taken into custody, nor did Gutierrez promise, trick, or coerce him into giving his statement.

The content of defendant's statement was not made a part of the appellate record and, therefore, we only consider the application of *Miranda* to the situation generally.

■ In the granting of a motion to suppress, it is for the trial court to weigh the evidence and so long as there is substantial evidence to support its ruling, the appellate court will not find error as a matter of law. *State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (Ct.App.1976). The trial court found that defendant should have been given his rights under *Miranda*. *Mi-*

*randa* requires law enforcement officers "before questioning someone in custody, to give specified warnings and follow specified procedures during the course of an interrogation." *Ramirez, supra; Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). *Miranda* applies when the individual is first subjected to police interrogation while in custody at the station "or otherwise deprived of his freedom of action in any significant way."

■ *Miranda* warnings need not be given simply because the "questioning takes place in the station house, or because the questioned person is one whom the police suspect," nor need the police give the warnings to everyone whom they question. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). *Miranda* warnings are required only where there is such a restriction on a person's freedom as to render him "in custody" and subject to a coercive environment. *Mathiason, supra.*

■ In the instant case, defendant was neither in custody nor deprived of his freedom of action in any significant way. There was no coercive atmosphere against which *Miranda* was designed to protect.

■ Defendant also contends that his statement was involuntary and in violation of the Fifth Amendment. The test for the voluntariness of a statement is based upon a clear manifestation by words and circumstances of a free and unconstrained choice. *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), as cited in *State v. Smith*, 80 N.M. 126, 452 P.2d 195 (Ct.App.1969). Deputy Gutierrez testified that defendant made his statement without any promise, trick, or coercion on his part, and defendant introduced no evidence to refute this.

■ A statement is also considered voluntary if the evidence demonstrates the defendant had "sufficient mental capacity at that time to be conscious of what he was doing, to retain memory of his actions, and to relate with reasonable accuracy the details of his actions." *State v. Sisneros*, 79

N.M. 600, 446 P.2d 875 (1968). The record shows that defendant appeared to be in control of his faculties at the time of the statement.

▪ Defendant's statements were voluntary. The trial court erred in suppressing these statements.

*Suppression of Grand Jury Testimony on the Grounds That Miranda Rights Should Have Been Given*

The trial court suppressed defendant's testimony before the grand jury for use at trial unless defendant "takes stand and then for purposes of impeachment" on the basis that "Defendant was not informed of his rights against self-incrimination prior to his giving testimony before the Grand Jury." At one of the motion hearings the trial court asked the district attorney whether defendant had been informed of his rights against self-incrimination before testifying in front of the grand jury. The district attorney responded in the negative, but stated that defense counsel had requested that defendant be permitted to testify before the grand jury. He was not subpoenaed, but came to the proceeding with his attorneys who were present outside of the grand jury room during his testimony.

There is no New Mexico law determining the applicability of *Miranda* warnings to grand jury proceedings. However, the U. S. Supreme Court in *U. S. v. Washington*, 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977) has held:

. . . But this Court has not decided that the grand jury setting presents coercive elements which compel witnesses to incriminate themselves. Nor have we decided whether any Fifth Amendment warnings whatever are constitutionally required for grand jury witnesses; . . . 431 U.S. at 186, 97 S.Ct. at 1818.

The U. S. Supreme Court, then, has not made mandatory the giving of *Miranda* warnings to potential defendants before they testify in front of a grand jury.

▪ *Miranda* warnings have been viewed as necessary for the protection of a defendant isolated from the protections of a lawyer and society, and in the custody of law enforcement officials. In this case, defendant requested that he be allowed to testify before the grand jury. . He came with his lawyers who remained outside the hearing room throughout his testimony. Defendant was not in custody or separated from the protections of his attorney. His experience before the grand jury contains none of the compelling circumstances underlying the reasons for the *Miranda* rights. *Miranda* warnings were not necessary. The trial court erred in holding that they were so required.

▪ Even though the parties only briefed the *Miranda* issue, the court suppressed defendant's statements on grounds that he was deprived of his Fifth Amendment rights. It is well-settled that the Fifth Amendment privilege against compelled self-incrimination extends to grand jury proceedings. *Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). The Fifth Amendment "does not automatically preclude self-incrimination, whether spontaneous or in response to questions put by government officials." *Washington, supra.* "It does not preclude a witness from testifying voluntarily in matters which may incriminate him." *U. S. v. Monia*, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376 (1943). In *Washington, supra*, the court in discussing *Garner v. U. S.*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976) stated that:

. . . the Self-Incrimination Clause is violated only when the Government compels disclosures which it knows will incriminate the declarant—that is, only when it intentionally places the individual under "compulsions to incriminate, not merely compulsions to make unprivileged disclosures." 431 U.S. at 190, 97 S.Ct. at 1820.

Although defendant in this case could have asserted his Fifth Amendment right not to answer grand jury questions which would compel him to testify against him-

self, he chose not to do so by voluntarily appearing and testifying before the grand jury. He was assisted by counsel's presence just outside the hearing room. Regardless of whether defendant made incriminating statements or merely unprivileged disclosures, his statements were not compelled.

The district attorney was under no mandate to inform him of his rights. The trial court erred in restricting the use of defendant's testimony before the grand jury on this basis.

*Suppression of Statements by a Deceased Co-conspirator to an Unindicted Co-conspirator*

Walt Strumoski, an unindicted co-conspirator, testified before the grand jury about statements made to him by Tony Candelaria, a deceased co-conspirator. The court suppressed these statements unconditionally in the event the case went to trial on grounds that (1) admission would deprive defendant of his Sixth Amendment right to confront and cross-examine the witnesses against him; and (2) the statements were hearsay not falling within the exceptions of N.M.R.Evid. 801(d)(2)(A–E) or 804(b)(4), (6), N.M.S.A.1978.

Out of court statements made by a co-conspirator about matters relating to the conspiracy are not admissible unless and until a prima facie case of conspiracy is shown by other independent evidence. *State v. Jacobs,* 91 N.M. 445, 575 P.2d 954 (Ct.App.1978); *State v. Armijo,* 90 N.M. 12, 558 P.2d 1151 (Ct.App.1976). This is the preliminary showing which must be made before the trial court can even consider unconditionally suppressing such statements. Here, however, the trial court suppressed the statements as a matter of law without regard to their content. Since the trial court could not have known whether the State could present a prima facie case of conspiracy at trial, it reversibly erred in unconditionally excluding such testimony. Admissibility should have been made contingent upon proof of a prima facie case of conspiracy through use of independent evidence and other factors generally considered in admitting or excluding evidence.

The court should not have made this determination as a matter of law until the State had the opportunity to make a prima facie showing of the existence of a conspiracy. *Jacobs, supra; Armijo, supra.*

Since the trial court erred in unconditionally excluding the testimony of Strumoski, any discussion of *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), which sets forth criteria for the admissibility of hearsay statements by co-conspirators under the Rules of Evidence is premature. The *Dutton, supra,* standards would be more appropriately used by the trial court in determining whether to admit Strumoski's statements in the event the State can demonstrate a prima facie case of conspiracy.

The trial court is reversed, the indictment is reinstated, and the case is remanded for trial.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.