607 P.2d 636

STATE of New Mexico,
Plaintiff-Appellee,

v.

Mario PARRILLO, Defendant-Appellant.

No. 3993.

Court of Appeals of New Mexico.

Oct. 23, 1979.

Rehearing Denied Nov. 7, 1979.

Steve H. Mazer, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WALTERS, Judge.

The defendant was convicted of assault under § 30–3–1 C, N.M.S.A.1978, in the magistrate court. His *de novo* appeal to the district court also resulted in conviction. He seeks to have the decision of the district court reversed.

Defendant, riding a motorcycle and stopped at a traffic light, saw his ex-wife driving an automobile heading in the opposite direction. As soon as the light turned

green the defendant turned around, followed her, and drove his motorcycle in front of her, causing her to drive off the highway to avoid an accident. He walked from his cycle to her car, which she had pulled off into a ditch, addressed her in some coarse, insulting, gutter terms and threatened her and her children with bodily harm. The encounter lasted about two minutes and the defendant drove off.

In his docketing statement defendant contended that defendant's alibi was sufficient to establish reasonable doubt and thus avoid a judgment of conviction.

In connection with this contention, defendant argues other sub-points of his docketing statement, i. e., that hearsay and opinion evidence were allowed to refute the alibi testimony, and that "the only proper evidence concerning the question of alibi and provocation were based upon inferences that were piled upon inferences and in the alternative were so insubstantial as to result in fundamental error." His briefed argument otherwise includes an objection to allowance of evidence of collateral offenses, but it departs from his docketing statement to assert further that the defendant was precluded from developing testimony supporting his theories of defense, and that the statute under which he was tried fails to provide notice of the offenses charged.

■ We recognize that, properly raised, we might agree that a constitutional infirmity in the statute exists insofar as *first* and *fourteenth* (*not* fifth or sixth) amendment rights are concerned, *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). We do not consider the argument of vagueness in defendant's brief, or his contention that he was restricted in presenting his theories of defense (which, incidentally, is not supported by the record). Neither issue was included in his docketing statement. *State v. Jacobs*, 91 N.M. 445, 575 P.2d 954 (Ct.App.), *cert. den.* 91 N.M. 491, 576 P.2d 297 (1978). Moreover, the question of the allegedly unconstitutional vagueness of the statute was not presented to the trial court for decision. A reviewing court will not reverse a trial court on a ground that the trial court was not asked to consider nor had the opportunity to rule upon. *Laguna Dev. Co. v. McAlester Fuel Co.*, 91 N.M. 244, 572 P.2d 1252 (1977); *see Melon v. State*, 90 N.M. 787, 586 P.2d 1233 (1977). We note the first amendment weakness of subsection C of § 30–3–1, N.M. S.A.1978, *sua sponte*, merely to alert the Legislature and prosecuting authorities of its possible constitutional imperfection in view of the Supreme Court's decision in *Gooding v. Wilson, supra.*

■ Returning, then, to the arguments raised below and preserved by the docketing statement, the record reveals that defendant's alibi was partially reinforced by one witness, denied by two others. As the trial of facts, the trial court resolved the conflict, observing that "to accept your proposition would mean that I would have to find everyone else in this court is a liar except [defendant]." The trial judge is presumed to know that he must be satisfied beyond a reasonable doubt of defendant's guilt. Defendant's alibi evidence was not sufficient, as a matter of law, to overcome the quantum of proof required for the trial court's decision.

■ There was limited evidence taken of collateral offenses committed by the defendant and the court itself raised some questions at that stage of the trial. But the evidence elicited was invited by the manner of defendant's cross-examination of the ex-wife. In explaining to the court that defendant was attempting to show harassment by his former wife's abuse of the prosecutorial process, after the State had objected to that line of questioning, defendant opened up the trial court's legitimate inquiry regarding the outcome of her previous complaints. If there was error—and we do not say there was—it was induced by defendant's injecting into the trial the issue of prior misdemeanor charges instituted by Mrs. Parrillo against defendant. He will not be heard to complain on appeal that he was prejudiced by evidence that might be objectionable under Rule 404, N.M.R. Evid., if offered by the State, when

he invited its introduction into the trial record. *State v. Sedillo,* 81 N.M. 47, 462 P.2d 632 (Ct.App.1969).

■ The hearsay and opinion evidence objections are predicated on testimony of the son of the parties that he had talked by telephone with his mother on the day she said she had been run off the road. He related the date of the conversation to the date the complaint was filed and the date his father had exercised visitation rights with his sister. The evidence was admitted not to show the truth of his mother's accusations but to establish how he remembered the whereabouts of his father at the time and date in question. The boy's testimony was not inadmissible under N.M.R. Evid. 801(c).

Finding no error, the judgment of conviction is affirmed.

IT IS SO ORDERED.

ANDREWS, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent:

Defendant was found guilty of violating § 30–3–1(C), N.M.S.A.1978. It reads:

Assault consists of . . .:

\* \* \* \* \* \*

C. the use of insulting language toward another impugning his honor, delicacy or reputation.

This provision focuses on written or spoken words and is unconstitutional. The constitutional issue was not raised below, but it may be raised for the first time on appeal. *State v. Austin,* 80 N.M. 748, 461 P.2d 230 (Ct.App.1969); *State v. Barreras,* 64 N.M. 300, 328 P.2d 74 (1958); *State v. Diamond,* 27 N.M. 477, 202 P. 988, 20 A.L.R. 1527 (1921). The reasons are stated in *State v. Armstrong,* 85 N.M. 234, 511 P.2d 560 (Ct.App.1973), Sutin, J., dissenting.

At common law a criminal assault was defined as "an attempt to commit violent injury on the person of another." *State v. Martinez,* 30 N.M. 178, 190, 230 P. 379

(1924). It does not require citation of authority to show that mere use of words alone does not constitute a criminal assault, however insulting, abusive or violent the words might be. 6 Am.Jur.2d *Assault and Battery* § 23 (1963); 6A C.J.S. *Assault and Battery* § 66, p. 434 (1975). *See Faubion v. Tucker,* 58 N.M. 303, 270 P.2d 713 (1954). There must be an apparent attempt to inflict a battery or bodily contact or harm upon another. 1 Warton's *Criminal Law and Procedure* (Anderson) § 329 (1957); 6A C.J.S. *Assault and Battery* § 64, p. 462; 6 Am.Jur.2d *Assault and Battery* § 3 (1963). However, where the legislature defines an offense, its definition supersedes the common law.

The question for decision is this:

Can Section 30–3–1(C) be sustained when it omits the essential elements necessary to constitute the crime of assault?

It is obvious that to allow "insulting language" to be an assault means that the legislature can declare "insulting language" to be any type of crime such as a battery, aggravated battery, larceny, abuse of privacy, trespass, or a nuisance. "Insulting language" is not an element of any of such crimes. To denominate an assault as a use of "insulting language" is beyond the police power of the State. To be valid, a penal statute must define the act necessary to constitute an offense with such certainty that a person who violates it must know that his act is criminal when he does it. If the statute is uncertain in its meaning, vague and indefinite, a person charged thereunder is deprived of due process of law. *State v. Prince,* 52 N.M. 15, 189 P.2d 993 (1948).

What does "insulting language" mean to the average person? What is meant by "impugning his honor, delicacy or reputation"? "Words in statutes are to be given their commonly understood meaning. *Language comprises both speech and writing; it is the expression of thought by means of either spoken or written words.*" [Emphasis added.] *State v. Clark,* 235 Wis. 628, 294 N.W. 25 (1940); *United States v. One Car Load of Corno. H. and M. Feed,* 188 F. 453

(D.C.Ala.1911). Black's Law Dictionary, p. 1022 (Revised Fourth Ed. 1968); 52A C.J.S. p. 385 (1968). It must be noted that "insulting language" is not limited to speech. It includes written words. Under subsection (C), an "assault" can be committed by writing a letter to another with an insulting tone.

Section 30–3–1(C) constitutes a crime if one person in New York writes or telephones another in California and uses "insulting language" that attacks "his honor, delicacy or reputation." I am not quite sure of what his "delicacy" is, but it must border on "daintiness, frailty, fineness, softness, fragility, sensitivity, finesse, tender feeling, considerations, decency," etc. Perhaps, it means "delicate treatment." To attempt to apply "insulting" language would depend upon the nature of the person to whom it is directed.

In the instant case, defendant directed a dirty "cuss" word to his ex-wife. It was M_____ f_____. In *Rosenfeld v. New Jersey*, 408 U.S. 901, 92 S.Ct. 2479, 33 L.Ed.2d 321 (1972), this word was used four times. The statute declared:

> "Any person who utters loud and offensive or profane or indecent language in any public street or other public place, public conveyance, or place to which the public is invited . . . is a disorderly person."

*Rosenfeld* was vacated and remanded for reconsideration in light of *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), and *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). *Gooding* involved a statute which declared use of "opprobrious words or abusive language, tending to cause a breach of peace" to be a misdemeanor. This statute was declared to be unconstitutionally vague and broad.

In *Plummer v. City of Columbus*, 414 U.S. 2, 94 S.Ct. 17, 38 L.Ed.2d 3 (1973), an ordinance provided that "No person shall abuse another by using menacing, insulting, slanderous, or profane language." In a per curiam opinion, the court held that the ordinance was facially unconstitutional as being vague and overbroad.

These are 5–4 decisions that may change with the substitution of a "conservative" justice for a "liberal" justice. But we must not forget that even in the 19th century, it was a "lamentable fact that this mode of expression ['damned son of a bitch'] is of too common use in the country." *Simmons v. State*, 23 Tex. 653, 5 S.W. 208, 209 (1887). This language did not come within the meaning of "the law of manslaughter arising upon insulting words used toward a female relative." A "cuss" word "is rather a sudden expression of anger and contempt . . . ." [Id. 209.] In the latter part of the 20th century, we must not view profanity or "insulting" language with such squinting eyes that a resort to epithets constitutes an assault, disorderly conduct or a breach of the peace. The use of profane language may, in itself, constitute a violation of law, *Baker v. State*, 16 Ariz.App. 463, 494 P.2d 68 (1972), but the name of the offense cannot be deleted for purpose of convenience to uphold a conviction. The State cannot prohibit speech merely because the words offend, cause indignation, or anger the addressee. "Here comes the god damn f_____ pigs again" did not constitute "fighting words." *State v. Authelet*, 385 A.2d 642 (R.I.1978).

Though the statute were constitutional, defendant did not violate it. In the latter part of the 20th century, epithets are of common use in this country. We should not hold a person guilty of an offense because the "cuss" word was shouted in anger. Some added factors are needed to make out a case of assault. *Dunning v. State*, 156 Tex.Cr.R. 446, 242 S.W.2d 367 (1951). None occurred in this case.