This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                   **No. 30,302**

**EDGAR MIGUEL SANTILLANO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Daniel Viramontes, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Margaret McLean, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**SUTIN, Judge.**

A jury found Defendant Edgar Santillano guilty of one count of criminal sexual penetration in the third degree of a child thirteen to sixteen years of age, contrary to NMSA 1978, Section 30-9-11(A) and (G)(1) (2007) (amended 2009), and of three counts of criminal sexual contact of a minor in the fourth degree, contrary to NMSA 1978, Section 30-9-13(A) and (D)(1) (2003). The charges arose out of Defendant's alleged contact with S.C. (Victim) who was age thirteen when the alleged crimes began and age fourteen when the crimes alleged ceased. Defendant appeals his convictions.

On appeal, Defendant claims that the district court made erroneous evidentiary rulings that require reversal of his convictions. Additionally, he argues that he was deprived of his right to effective assistance of counsel and that the State failed to present sufficient evidence to support the jury's verdicts. We hold that the district court did not err in regard to its evidentiary rulings and that the evidence was sufficient to support Defendant's convictions. Further, we hold that Defendant's claim of ineffective assistance of counsel is unsupported by the record on appeal. We affirm.

**BACKGROUND**

In addition to the brief summary that follows, we provide background and factual information throughout the Opinion as required to frame our analysis.

Defendant's one-day jury trial was held on November 6, 2009. At trial, the State presented three witnesses—Victim and two detectives from the Luna County Sheriff's Department who were involved in the investigation of this case. Defendant did not testify, and no witnesses testified on his behalf.

**The District Court's Pretrial Evidentiary Ruling**

In a motion for a pretrial ruling, the State, anticipating that Defendant "may testify in his own defense," sought the district court's permission to inquire on cross-examination into specific instances of conduct probative of truthfulness or untruthfulness. *See* Rule 11-608(B)(1) NMRA (stating that the district court may allow a party to inquire, during cross-examination, into specific instances of a witness's conduct if they are probative of the witness's character for truthfulness). Particularly, the State requested that it be permitted to inquire into Defendant's having, in May 2008, applied for entry to the United States, at which time he declared himself to be a United States citizen and presented homeland security officials with a false birth certificate. Defendant later admitted to the officials that he was not a citizen and that he did not possess any legal documents to prove otherwise. Additionally, the State sought to present evidence that Defendant admitted to the officials that he was a member of a criminal organization.

At a pretrial hearing on the State's motion, the district court ruled that the State would be permitted to inquire into Defendant's having presented the false birth certificate and, as well, into his later admission to the homeland security officials that he was not a citizen. The court explained that it would not allow the State to raise any issue with respect to Defendant's membership in a criminal organization because such information was "very prejudicial and not very probative." *See* Rule 11-403 NMRA (stating that the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

Defendant claims, on appeal, that the court's ruling in regard to the admissibility of his false statement to homeland security, as well as his having presented a false birth certificate, was erroneous. Defendant maintains that the incident was not probative of his character for truthfulness because, at the time that he made the false statement, he was under duress and seeking asylum from violence by a criminal organization. Although Defendant did not testify, and the impeachment did not occur, Defendant requests a reversal of his convictions and a new trial on the basis of the court's pretrial ruling.

Generally, we defer to the district court's decision to admit or to exclude evidence, and we will not reverse the court's ruling unless there has been an abuse of discretion. *State v. Quinones*, 2011-NMCA-018, ¶ 19, 149 N.M. 294, 248 P.3d 336.

4

"We cannot say that the district court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (alteration, internal quotation marks, and citation omitted).

We do not believe that the district court's ruling constituted an abuse of discretion. Defendant's having made false statements to homeland security officials falls within the scope of Rule 11-608(B)(1), and Defendant's argument to the contrary is unavailing. *See State v. Allison*, 2000-NMSC-027, ¶¶ 11-12, 129 N.M. 566, 11 P.3d 141 (explaining that a defendant's false statement to a police officer about his identity would have been admissible pursuant to Rule 11-608(B) "as a specific instance of conduct [that] demonstrates untruthfulness"); *cf. State v. Griego*, 2004-NMCA-107, ¶¶ 4, 13, 136 N.M. 272, 96 P.3d 1192 (explaining false statements made by a witness who, in his capacity as a paid police informant had made false reports to police, fell within the ambit of the impeachment rule).

**Defendant's Ineffective Assistance Claim**

The Sixth Amendment to the United States Constitution guarantees Defendant the right to the effective assistance of counsel. *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032. Defendant claims that he was deprived of this right on two bases. First, he claims that his trial counsel was ineffective for "apparently" misunderstanding the district court's pretrial ruling regarding the

impeachment evidence and, on the basis of that misunderstanding, improperly advising Defendant not to testify at trial. Second, he claims that his trial counsel was ineffective for failing to present any witnesses in his defense. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44.

Both aspects of Defendant's ineffective assistance of counsel claim depend upon matters that are not part of the record on appeal. We note particularly that the record contains no evidence of Defendant's assertions that his counsel advised him not to testify or that specific witnesses would have provided testimony favorable to his defense. *See State v. Gonzales*, 2011-NMCA-007, ¶ 30, 149 N.M. 226, 247 P.3d 1111 (explaining that assertions that are unsupported by the record will not be considered on appeal). Because this Court "cannot evaluate matters outside of the record[,]" *State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845, Defendant's claim is "best reserved for habeas corpus, in which a subject-specific record can be developed before the trial court." *State v. Bahney*, 2012-NMCA-039, ¶ 49, 274 P.3d 134 (explaining that a claim of ineffective assistance of counsel claim that was based upon the defendant's counsel having "effectively prevented her from testifying in her own defense" by failing to advise her of her right to do so, and upon her counsel's failure to locate an alibi witness should be raised in a habeas corpus proceeding rather

6

than upon direct appeal). We decline further consideration of Defendant's ineffective assistance of counsel claim. *See Telles*, 1999-NMCA-013, ¶ 25 (declining to consider the defendant's claim of ineffective assistance of counsel where the record did not contain evidence of the counsel's alleged failures).

**The District Court's Evidentiary Ruling Regarding Detective Batts's Testimony**

Detective Allen Batts was involved in the investigation of this case. At trial, the State asked Detective Batts about his experience and training particularly with regard to sex crime investigations. Detective Batts testified that he had twenty-two years of law enforcement experience, that he had "special training in sex crime investigations[,]" and that he had experience investigating sex crimes against children. Having garnered testimony regarding his experience, the State asked Detective Batts the question, "[f]rom your experience and your training[,] how common is it for children to delay reporting being sexually molested?"

Following that question and upon Defendant's counsel's request for a bench conference, the following discussion ensued at the bench.

[Defendant's counsel]: I'm objecting on foundational grounds. He hasn't really laid much of a foundation as to how he would come by this particular information except that he investigated a number of sex crimes.

The Court: Attended various institutions of training. Your response?

7

[Prosecutor]: Your Honor, he can tell us about what his experience has been, personally, and if he has—I suppose what he's learned as part of his training as a detective. I'm not asking him to talk about any specific case, just generalities.

The Court: He has testified that he's been through various institutes concerning training for investigation of sex crimes, he also testified he's got experience in the same, court will overrrule[] the objection.

After the bench conference was concluded, Detective Batts testified that "[i]t's very common as well for children as it is for adults" to "delay reporting [after] having been a victim of some kind of sexual abuse[.]"

Defendant argues, pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), that Detective Batts, who was not qualified as a sexual abuse expert, should not have been permitted to state his opinion that it is normal for children to delay disclosure of sexual abuse. In Defendant's view, the district court's admission of that testimony was an abuse of discretion and that the alleged error warrants reversal of his convictions and a new trial. We disagree.

Our review of evidentiary rulings is for an abuse of discretion. *Quinones*, 2011-NMCA-018, ¶ 19. Absent an abuse of discretion, we will not reverse the court's ruling. *Id.* A discretionary decision made pursuant to the district court's

misapprehension of the law constitutes an abuse of discretion. *State v. Miller*, 2012-NMCA-051, ¶ 10, 278 P.3d 561.

Detective Batts was not offered by the State as an expert witness or designated as an expert by the court under Rule 11-702 NMRA; rather, the challenged evidence was admitted under Rule 11-701 NMRA. Rule 11-701 governs opinion testimony by lay witnesses. The rule reads as follows:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is
>
> A.    rationally based on the witness's perception,
>
> B.    helpful to clearly understanding the witness's testimony or to determining a fact in issue, and
>
> C.    not based on scientific, technical, or other specialized knowledge within the scope of Rule 11-702 NMRA.

Rule 11-701. Rule 11-701 is substantively identical to its federal counterpart. *See* Fed. R. Evid. 701. Owing to the similarity between the New Mexico and federal rules, federal case law on this issue may inform our analysis. *See State v. Martinez*, 2006-NMCA-148, ¶ 12, 140 N.M. 792, 149 P.3d 108 (explaining that where a state rule of evidence is similar to its federal counterpart, federal law interpreting the rule is instructive).

In regard to Subsection (A) of Rule 11-701, Defendant cites to *State v. Woodward*, 121 N.M. 1, 908 P.2d 231 (1995), *rev'd in part on other grounds sub*

9

*nom. Woodward v. Williams*, 263 F.3d 1135 (10th Cir. 2001). In *Woodward*, our Supreme Court reviewed the admission under Rule 11-701 of the testimony of an investigator in the employ of the district attorney who, having driven certain routes, testified as to the time it took to drive them. *Woodward*, 121 N.M. at 10, 908 P.2d at 240. The *Woodward* Court explained that because the investigator "based his testimony on first-hand knowledge he obtained from personally driving the routes[,]" and because "his opinion was well within the range of opinions a normal person would form after driving these routes" the testimony satisfied Rule 11-701(A). *Woodward*, 121 N.M. at 10-11, 908 P.2d at 240-41.

Detective Batts's testimony, like the opinion testimony of the *Woodward* witness, was based on his personal, first-hand experience, namely, his having previously been involved in the investigation of sex crimes. Defendant does not provide any authority or argument to the effect that Detective Batts's opinion fell outside the range of opinions that a "normal person" who had been involved in such investigations would form based on those experiences. *See id.* at 10, 908 P.2d at 240. The district court did not err in concluding Detective Batts's testimony was supported, in part, by the foundation of his personal experience and observations and thereby satisfied Rule 11-701(A).

10

Defendant does not dispute that Detective Batts's testimony was "helpful to clearly understanding the witness's testimony or to determining a fact in issue[.]" Rule 11-701(B). The State maintains that it elicited Detective Batts's opinion regarding the frequency of delayed disclosure among sexual abuse victims to assist the jury in understanding Victim's delayed reporting, and Defendant provides us with no argument or authority to the contrary. *See State v. Templeton*, 2007-NMCA-108, ¶ 22, 142 N.M. 369, 165 P.3d 1145 (recognizing that "the failure to respond to contentions made in an answer brief constitutes a concession on the matter" (internal quotation marks and citation omitted)). We conclude that the testimony was proper under Rule 11-701(B).

The crux of Defendant's argument appears to be that Detective Batts offered "expert" testimony in the guise of lay-opinion testimony thereby violating Subsection (C) of Rule 11-701. Defendant's argument is based upon the erroneous assumption that testimony regarding delayed disclosure of sexual abuse may only be presented through an expert who is in possession of "scientific, technical, or other specialized knowledge" and that it may never be admitted through a lay witness. We reject this contention.

Although "an expert witness is needed when details of a scientific or specialized theory and its application to the facts of a particular case are being introduced to the

jury," the objectionable portion of Detective Batts's testimony included neither an explanation of the theory of delayed disclosure nor an attempt to explain how the theory applied in this case. *State v. Sena*, 2008-NMSC-053, ¶¶ 19-22, 144 N.M. 821, 192 P.3d 1198 (explaining that evidence of the defendant's having engaged in "grooming behavior" toward his sexual abuse victim was permissibly presented by a lay witness under Rule 11-701 because the witness neither "expound[ed] upon the theory of grooming [nor] explain[ed] how that theory applied" to the facts of that case). Nor was any special expertise required for Detective Batts to conclude, based on his investigatory experience, that children and adults alike commonly delay reporting after having been a victim of sexual abuse. In this case, where Detective Batts's testimony was limited to his general observation, based upon his personal investigatory experience, and included neither an explanation nor an application of a scientific or psychological theory, the testimony did not violate Rule 11-701(C).[1]

---

[1] Detective Batts's testimony, though properly admitted as lay testimony was on the edge of expert testimony. If Detective Batts had extended his testimony with so much as a mere sentence connecting his stated general observation regarding delayed disclosure to Victim in this case, the admission of his testimony under Rule 11-701 would have been error. Notwithstanding its classification as lay testimony, testimony such as this, particularly when it is presented by a police officer and the State has not listed any expert witnesses, should be subject to the rules of pretrial disclosure.

Defendant's citation to *United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007), and to *Lamere v. New York State Office for the Aging*, 223 F.R.D. 85 (N.D.N.Y. 2004), is not persuasive. In *Rigas*, the court determined that the testimony of an accountant (DiBella) that was admitted pursuant to Federal Rule 701 did not constitute expert testimony. *Rigas*, 490 F.3d at 222-24. In *Rigas*, the government did not present DiBella as an expert witness, yet the defendants asserted that DiBella "improperly offered expert opinion testimony." *Id.* at 222. The court explained, in pertinent part, that insofar as DiBella's opinion was limited to the facts of which he became aware through his experience as the defendants' company's accountant and was not an exposition of what should have occurred as a matter of appropriate accounting techniques, his testimony was permissible under Rule 701. *Rigas*, 490 F.3d at 225. To the extent that a comparison between *Rigas* and the present case may be drawn, we reiterate that Detective Batts did not attempt any application of a theory of delayed reporting to the particular facts of this case. Thus, here, as in *Rigas*, the lay witness avoided testifying as to what "should" have occurred under the applicable theory as applied to the at-issue facts.

In *Lamere*, the court was faced with the issue of whether a treating physician, who was not retained as an expert, was entitled to "a reasonable fee from the deposing party for the testimony to be provided at the deposition." 223 F.R.D. at 86. As a

13

preliminary or underlying question, the court was required to resolve the question whether the physician was "an expert witness, a fact witness, or a combination of both." *Id.* at 87. The court reasoned that insofar as a treating physician's testimony will necessarily encompass elements of scientific or other specialized knowledge that "can be mastered only by specialists in the field" such testimony falls within the scope of Federal Rule of Evidence 702. *Lamere*, 223 F.R.D. at 87-88 (internal quotation marks and citation omitted). We see no reasonable basis for comparison, nor does Defendant offer one, between a treating physician whose testimony will include, among other things, "the treatment, diagnosis, and prognosis" of a patient, *id.* at 87, and Detective Batts's general, experientially based observation regarding the frequency with which victims delay reporting sexual abuse. We are not persuaded that *Lamere* mandates a conclusion that Detective Batts's testimony violated Rule 11-701(C).

In sum, Detective Batts's testimony was admissible lay person testimony under Rule 11-701 because his testimony was rationally based on his own experientially gained knowledge, helpful to the jury, and it did not include a theoretical application to the particular facts of this case. Defendant's challenge to the foundation underlying the officer's testimony goes to the weight, not the admissibility, of the testimony. *See State v. Wildgrube*, 2003-NMCA-108, ¶¶ 13-15, 134 N.M. 262, 75

14

P.3d 862 (explaining that the defendant's challenge to the admission of the testimony of a police officer who testified as a lay witness based on his training and experience, but who was not qualified as an expert, went to the weight, not the admissibility, of the testimony). Defendant had an opportunity, which he declined, to cross-examine Detective Batts. Nor did defense counsel seek to voir dire Detective Batts outside the presence of the jury on the officer's experience or training. The district court did not abuse its discretion in admitting Detective Batts's testimony. *See id.* ¶ 15.

**Defendant's Sufficiency of the Evidence Claim**

Defendant claims, pursuant to *Franklin*, 78 N.M. 127, 428 P.2d 982, and *Boyer*, 103 N.M. 655, 712 P.2d 1, that the State failed to present sufficient evidence to support each of Defendant's convictions. In reviewing the sufficiency of the evidence, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Trujillo*, 2012-NMCA-092, ¶ 5, 287 P.3d 344 (emphasis, internal quotation marks, and citation omitted). An appellate court "will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *State v.*

15

*Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (alterations, internal quotation marks, and citation omitted).

The jury found Defendant guilty of one count of criminal sexual penetration in the third degree of a child thirteen to sixteen years of age, contrary to Section 30-9-11(A) and (G)(1), and guilty of three counts of criminal sexual contact of a minor in the fourth degree, contrary to Section 30-9-13(A) and (D)(1). As to the charged criminal sexual penetration, the jury was instructed that the State was required to prove, beyond a reasonable doubt, that

1. . . . [D]efendant caused the insertion, to any extent, of a finger into the vagina of [Victim];

2. [Victim] was at least 13 but less than 16 years old;

3. . . . [D]efendant was 18 years old or older at the time of the offense;

4. . . . [D]efendant is at least 4 years older than [Victim];

5. This happened in New Mexico on or between the 16th day of November[] 2008 and the 30th day of March[] 2009.

As to the charged counts of criminal sexual contact of a minor, the jury was instructed that the State was required to prove, beyond a reasonable doubt, that

1. . . . [D]efendant touched or applied force to the breast [(as charged in Counts 2 and 3) and to the vagina (as charged in Count 4)] of [Victim];

2. . . . [D]efendant used physical force or physical violence;

16

3. [Victim] was at least 13 but less than 18 years old;

4. This happened in New Mexico on or between the 16th day of November[] 2008 and the 30th day of March[] 2009.

We turn now to the evidence of record that supported the jury's verdicts.

Victim testified as to the events that led to the charges in this case. Victim testified that her date of birth was in January 1995 and that on the day of trial, November 6, 2009, she was fourteen years old. According to Victim, Defendant moved into her family's house "[a]fter Thanksgiving" of 2008. Victim's understanding of Defendant's role in the family was that of an older brother to her. Evidence of Defendant's age was presented through Detective Gary Leyba, who testified that when he questioned Defendant in connection with this case, he learned that Defendant's date of birth was in November 1990.

Victim testified that at the beginning of Defendant's stay, things with him "were okay" but that she started to feel differently when he began to "go into [her] bedroom a lot." On a weekend in December, when Victim's parents were out of town, Defendant went into Victim's bedroom where he "threw [her] on the bed and started touching [her]." Once Victim was on the bed, Defendant "got on top of [her] and started touching [her]" on her breasts, over her clothes.

17

Another incident occurred in January, around Victim's birthday, when her parents were outside. Victim testified that she was in her bedroom when Defendant "grabbed [her] from behind and started kissing [her]." Victim testified that the part of her body that Defendant grabbed during this incident was her breasts, over her clothes.

Victim described another incident that occurred in March, when Victim's parents were out of the house, visiting Victim's sick grandfather. Victim explained that she was in the living room when Defendant "came from behind and put his arms around [her], and he started touching [her.]" She elbowed him and then went to the couch; he followed her and then "hugged [her] and then he was putting his hand down [her pajama] pants[.]" During this incident, Defendant "grabbed [Victim's] vagina" underneath her clothes. Victim testified that Defendant "was touching [her with his fingers] trying to go inside [her] vagina" but that, during that incident, he did not succeed in doing so.

Victim testified that a final incident occurred "[b]efore Memorial Day" at night, when she was walking back from her mother's room. During this incident, Defendant pulled her into her brothers' bedroom. Defendant then "put his finger in [Victim's] vagina."

Viewing the foregoing testimony of Victim in the light most favorable to the jury's verdicts, we conclude that the State presented sufficient evidence to support a finding of guilt on each of the charges against Defendant.  In sum, with regard to the charge of criminal sexual penetration, the State provided the requisite information regarding the respective ages of Victim and Defendant; and Victim's testimony regarding the pre-Memorial Day incident in her brothers' room satisfied the remaining elements.  In regard to the three charges of criminal sexual contact, Victim's testimony regarding the incidents that occurred in December, January, and March, respectively, provided a sufficient evidentiary basis for the jury's affirmative finding as to each element of Defendant's criminal acts.  Defendant's sufficiency of the evidence argument does not provide any basis for reversal.

**CONCLUSION**

Based on the foregoing analyses, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**I CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

**RODERICK T. KENNEDY, Judge (specially concurring).**

**KENNEDY, Judge (specially concurring).**

It may well be that Defendant may only receive adequate review of his counsel's performance in a habeas proceeding. He did attack the foundation for Detective Batts's testimony about delayed reporting of abuse. Having lost that battle, Defendant neither engaged in voir dire of Detective Batts nor cross-examined him concerning his testimony about delayed disclosure of abuse by child victims. Reducing the rationale for admission of Detective Batts's testimony to a weight versus sufficiency problem is little better from our end. Even lay testimony requires some foundation to be laid. Although I am concurring with the result in this case, I write separately to outline the cause of my queasiness with the Majority's conclusion that Detective Batts's testimony was admissible under Rule 11-701.

The Majority seeks to equate schooling in and investigation of child sexual abuse with a person who drives a particular route later testifying about how long it took to do so. Majority Op. p. 10:1-5. The defective logic in play is that having an opinion that a "normal person" might have about investigating sex crimes is arrived at in the same way a normal person might form an opinion after driving the route in question. The logic fails because normal people are neither recipients of special training in sex crime investigations from various institutes, nor do they conduct such investigations. More to the point, no normal person would testify from "experience and . . . training[,] how common is it for children to delay reporting being sexually

molested," Majority Op. p. 7:9-11, because normal people do not receive such training. This is the first problem, and I discuss it in greater detail below. Second, lay witnesses and lay testimony are different things, and the emphasis of the evidentiary rule is on the latter—testimony. By emphasizing who Detective Batts is by virtue of his position and training, the Opinion shifts the spotlight from the expert nature of his testimony under our Rules of Evidence.

Rule 11-701(A) requires that the opinion to which Detective Batts testified is to be "rationally based on the perception of the witness[.]" This is the "familiar requirement of first-hand knowledge or observation." Fed. R. Evid. 701 advisory committee's note; *Sanchez v. Wiley*, 1997-NMCA-105, ¶ 17, 124 N.M. 47, 946 P.2d 650 ("To lay a foundation for the admission of Rule 11-701 testimony, the proponent is required to show that the witness has first-hand information which is rationally connected to the opinion formed."); *Dick v. City of Portales*, 118 N.M. 541, 544, 883 P.2d 127, 130 (1994) ("A lay person who gives opinion testimony must show first-hand knowledge of the facts supporting his opinion.") The conversation between defense counsel, commenting on the paucity of the foundation for Detective Batts's testimony, and the district court stating its decision to admit, was based on Detective Batts having attended various institutions of training. Majority Op. p. 7:14 to p. 8:4. This shows the problem with the testimony. Nowhere are we apprised concerning how many cases which Detective Batts relied on from his experience to reach this

22

conclusion. We cannot assess in how many cases he has been involved throughout his career, or the proportion of them from which he himself can conclude that delayed reporting is very common. The placement by Detective Batts of Victim in a group with other victims, within which group the delayed reporting of "some kind of sexual abuse" is collectively "very common," e.g., an appreciable and significant proportion, is an opinion beyond his ability to form based on his first-hand experience without having other, more specialized, training and experience. Hence, it is not proper lay testimony.

This case is unlike *Woodward*, where driving a given route in a given time were purely experiential matters, or *State v. Luna*, 92 N.M. 680, 594 P.2d 340, in which lay opinion concerning agreement to snatch a purse was allowed based on the witness hearing discussion among the perpetrators. This case more evokes *Dick*, which found incompetent a minister's testimony regarding a liquor license transfer that "there was an additional cost to the city when an additional liquor establishment was in operation or that lives were lost and 'people knifed over there quite frequently' because of liquor sales," because it "did not associate the moral effect of transfer with the particular applicant." *Dick*, 118 N.M. at 544, 883 P.2d at 130. *State v. Alberico* points out clearly that lay opinion testimony is generally admitted only in "limited circumstances." 116 N.M. 156, 166, 861 P.2d 192, 202 (1993). In my view, even *Sena* can easily be distinguished because our Supreme Court held that lay persons

23

could read sexual intent into showing a child pornography, women's underwear, and showering naked with the victim without requiring expert testimony that might be required to establish a specific named behavior recognized in a specialized field. 2008-NMSC-053, ¶¶ 19-20.

Detective Batts's opinion, however, was offered by the State as the result of his experience and training. The Opinion, running counter to the language of Rule 11-701, states that Detective Batts's opinion was not offered as an expert witness basing testimony on his knowledge, training, or experience under Rule 11-702, but was rather admitted as lay testimony. Majority Op. p. 8:20 to 9:2. Taking in a number of perceptions to conclude that driving a route at legal speeds takes a certain amount of time, that a person was drunk, or a car was going fast is one thing. Concluding that Victim is one of a "very common" group of people who delay reporting sexual abuse is an opinion based on an entirely different thing. A detective's testimony that it was not unusual for sexual abuse victims to delay disclosure of their abuse was ruled to be erroneously admitted lay testimony in *State v. Gonzalez*, 834 A.2d 354, 358 (N.H. 2003).

My underlying basis, for concluding that it was error to admit Detective Batts's testimony because it was improper expert opinion, was summarized by the *Gonzalez* Court:

24

The testimony at issue in the present case involved whether, in sexual abuse cases, victim denials and recantations were not unusual. The tendency or frequency of sexual abuse victims' denials and recantations are not observations that any layperson is capable of making, but rather require special experience and knowledge not possessed by the public at large. We have recognized that a layperson is not capable of making such observations because a child's delayed disclosure of abuse, inconsistent statements about abuse, and recantation of statements about abuse, may be puzzling or appear counterintuitive to lay observers when they consider the suffering endured by a child who is continually being abused. Because of its counterintuitive nature, expert testimony may be permitted to educate the jury about apparent inconsistent behavior by a victim following an assault and to provide useful information that is beyond the common experience of an average juror.

*Id.* (alteration, internal quotation marks, and citations omitted). In *Gonzalez*, the detective who testified to scores of investigations and training, and a social worker with considerable experience, were held to be incompetent lay witnesses to testify about whether delayed disclosure was unusual because, to reach the conclusion, "specialized training, experience[,] and skill not within the ken of the ordinary person" was required. *Id*. at 359 (internal quotation marks and citation omitted). In short, they were erroneously admitted to give lay testimony when they should have been testifying as experts. The potential use of testimony by a witness to imply class membership is also disturbing as noted by the Supreme Court of Kentucky.

[W]here a victim had delayed reporting of abuse, we held improper the testimony of a seasoned child sex abuse investigator stating that it was common, in her experience, for sexually abused victims to delay reporting of the abuse. [The Supreme Court of Kentucky] held that a party cannot introduce evidence of the habit of a class of individuals

25

> either to prove that another member of the class acted the same way under similar circumstances or to prove that the person was a member of that class because he/she acted the same way under similar circumstances.

*Kurtz v. Commonwealth*, 172 S.W.3d 409, 414 (Ky. 2005) (interal quotation marks and citation omitted). In the case before us, if the State anticipated a defense of fabrication based on the victim's delayed reporting, the testimony might have been admissible to rehabilitate her, but only then with expert testimony. *See Sanderson v. Commonwealth*, 291 S.W.3d 610, 613 (Ky. 2009). Such testimony would also require a proper foundation to support underlying assumption that such a delay in reporting is indeed attributable to things other than a victim's fabrication. Preemptive use of this sort of opinion in this case compounds the problem that it was Detective Batts's lay testimony in the first place.

Rule 11-701 exists in part to prevent the improper introduction of expert opinion in the guise of lay testimony. Rule 11-701(C) allows no lay opinion that would be "based on scientific, technical[,] or other specialized knowledge within the scope of Rule 11-702." The committee commentary to Rule 11-701, in part, states:

> This amendment[, Subsection (C),] was made . . . to avoid the misuse of the lay witness opinion rule as a guise for offering testimony that in reality is based on some form of claimed expertise of the witness. . . . If the witness testifies to such scientific, technical[,] or other specialized knowledge, then the admissibility of such testimony must be analyzed under Rule 11-702 . . . for expert testimony.

Rule 11-701 (internal quotation marks omitted). Experts may testify outside of their personal experience on the assumption that "relaxation of the usual requirement of first-hand knowledge is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Alberico*, 116 N.M. at 167, 861 P.2d at 202 (alteration, internal quotation marks, and citation omitted).

I regard the testimony by Detective Batts as inadmissible lay opinion and incompetent expert testimony. The Majority's conclusion is simply incorrect on the law. I would hold that since it was not offered as expert testimony, with Detective Batts's supposed expertise and training under Rule 11-702 being the very minimum of such an evidentiary proffer by the State, the admission of the testimony was error by the court. This evidentiary problem of slack admissibility standards for *faux* lay testimony (perhaps also exhibited in *Sena*) is in dire need of clarification. Disagreeing as to the Majority's erroneous view of this evidence, I nevertheless conclude that any error would have been harmless and, accordingly, concur in affirming Defendant's convictions.

_____
**RODERICK T. KENNEDY, Judge**